J-S70011-16

2016 PA Super 273

| COMMONWEALTH OF PENNSYLVANIA | | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| Appellee | | |
| v. | | |
| UNIQUE S. KENNEDY | | |
| Appellant | | No. 680 EDA 2015 |

Appeal from the Judgment of Sentence February 20, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0012026-2013

BEFORE:  OLSON, OTT and MUSMANNO, JJ.

OPINION BY OLSON, J.:                    **FILED DECEMBER 06, 2016**

Appellant, Unique S. Kennedy, appeals from the judgment of sentence entered on February 20, 2015.  In this case, we consider whether the trial court abused its discretion in admitting lay opinion testimony from a crime scene investigator regarding bullet trajectory.  After careful consideration, we hold that the trial court did not abuse its discretion by admitting the lay opinion testimony.  We also clarify the interaction between Pennsylvania Rules of Evidence 404(a)(2)(A) (defense introduction of evidence of a pertinent character trait) and 608(a) (admission of evidence of witness' character for truthfulness to counter attack).  Based upon our analysis, we conclude that the trial court properly excluded evidence relating to Appellant's truthfulness.  As we also find Appellant is not entitled to relief on his remaining claims, we affirm.

We have summarized the factual background of this case as follows:

These charges arose out of a dispute over a woman that both [Appellant's co-defendant, Stephon Harris ("Harris"),] and the decedent had an interest in. On July 9, 2013, at approximately 9:45 p.m., John Anderson ("Anderson") was shot and killed in the entryway of his apartment. The entryway at this location had a street entrance door and a second door that led up to the single, second floor apartment that Anderson shared with Naheem Hines ("Hines"), and Mohamad Khardani ("Khardani"). Khardani owned the building that housed the apartment, and a pizza shop located below the apartment where Khardani worked.

Earlier that day, Anderson had exchanged a series of text messages and phone calls with [Harris' girlfriend] when [Harris] intercepted his girlfriend's phone call and spoke directly to Anderson. An argument ensued over the phone and Anderson said, "I'm at 72nd, do what you gotta do." [Harris] was visiting his friend Davon Kennedy ("Davon") and Davon's cousin[, Appellant,] when he recounted the argument that he had with Anderson over the phone. [Harris] said that "Anderson needed to go." The three men walked to a store then [Harris] and [Appellant] told Davon they would catch up with him later, and walked away together.

That evening, Hines was returning to the apartment when he saw two males who appeared to be attempting to open the apartment's street level entry door. Though the males were unfamiliar to Hines, he was later able to identify [Appellant] as one of the males. As Hines approached, the two males drifted away from the apartment door and towards the pizza shop. Hines asked Khardani, who was working in the pizza shop at the time, if he knew the two males. Khardani recognized [Harris] as a repeat customer of the pizza shop and greeted him. . . . Khardani did not recognize [Appellant].

[Appellant] asked Hines whether Anderson was at home and said "Ace" was looking for him. Hines replied that he did not know but would check when he went upstairs. Upon arriving upstairs, Hines learned that Anderson was indeed at home along with Tanesha Brooks-Mapp ("Brooks-Mapp"). Hines delivered the message that there were two males downstairs who were looking for Anderson. Hines, Brooks-Mapp[,] and Anderson went downstairs to the main entry of the apartment. Anderson was unarmed. As soon as Anderson began to open the interior door, five to six gunshots rang out and Anderson fell to the floor in the

doorway of the apartment. Hines was able to see that [Appellant] was the shooter and saw the two males with whom he had spoken earlier running across the street, away from the scene of the shooting. Khardani was inside of the pizza shop when he heard shots. Khardani looked up to see [Harris] and the male he was with running from the scene and Anderson lying on the ground.

*Commonwealth v. Harris*, 2016 WL 6649244, *1 (Pa. Super. Nov. 10, 2016) (unpublished memorandum) (internal alterations, ellipses, and citation omitted).

The procedural history of this case is as follows. On September 30, 2013, the Commonwealth charged Appellant via criminal information with first-degree murder,[1] conspiracy to commit first degree murder,[2] carrying a firearm without a license,[3] carrying a firearm on the streets of Philadelphia,[4] possessing an instrument of crime,[5] attempted murder,[6] aggravated assault,[7] and recklessly endangering another person.[8] On February 9, 2015, Appellant orally moved *in limine* to exclude the lay opinion testimony of

---

[1] 18 Pa.C.S.A. § 2502(a).

[2] 18 Pa.C.S.A. §§ 903, 2502.

[3] 18 Pa.C.S.A. § 6106(a)(1).

[4] 18 Pa.C.S.A. § 6708.

[5] 18 Pa.C.S.A. § 907(a).

[6] 18 Pa.C.S.A. §§ 901, 2502.

[7] 18 Pa.C.S.A. § 2702(a).

[8] 18 Pa.C.S.A. § 2705.

Officer Jacqueline Davis, a crime scene investigator, whose proposed testimony included her observations regarding the angle of trajectory of bullets fired through the door of Anderson's apartment. The trial court denied the motion that same day.

At trial, Officer Davis opined that, based upon the bullet holes in the door and the location of evidence inside the foyer, the apartment door was partially open when Appellant opened fire. Appellant testified on his own behalf, stating that he shot Anderson in self-defense. Appellant sought to call witnesses to testify as to his character trait of truthfulness. The Commonwealth objected to this character evidence and the trial court sustained the Commonwealth's objection. On February 20, 2015, a jury found Appellant guilty of first-degree murder, conspiracy to commit first degree murder, carrying a firearm without a license, possessing an instrument of crime, and recklessly endangering another person. The trial court immediately sentenced him to an aggregate term of life imprisonment without the possibility of parole. This timely appeal followed.[9]

Appellant presents five issues for our review:

1. Whether the Commonwealth did not prove, by sufficient evidence that Appellant acted with the required malice for any of

---

[9] On July 30, 2015, the trial court ordered Appellant to file a concise statement of errors complained of on appeal ("concise statement"). **See** Pa.R.A.P. 1925(b). On September 10, 2015, Appellant filed his concise statement. On October 30, 2015, the trial court issued its Rule 1925(a) opinion. All issues raised on appeal were included in Appellant's concise statement.

the charges and, hence, the Commonwealth has failed to prove the elements of the crimes[ and hence a]n arrest of judgment must be awarded[?]

2. Whether Appellant must be awarded a new trial as the [trial c]ourt denied Appellant's motion *in limine* to preclude Officer Jacqueline Davis from providing an opinion that the front door at the crime scene was open at the time of the shooting[?]

3. Whether Appellant must be awarded a new trial as the [trial c]ourt precluded the introduction of defense evidence following [Hines' testimony?]

4. Whether Appellant must be awarded a new trial as the [trial c]ourt precluded the introduction of character evidence[?]

5. [Whether, i]n the alternative, Appellant must be awarded a new trial as the greater weight of the evidence does not support the verdict. . . ?

Appellant's Brief at 3.[10]

Appellant's first issue challenges the sufficiency of the evidence.[11] "Whether sufficient evidence exists to support the verdict is a question of law; our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Walls***, 144 A.3d 926, 931 (Pa. Super. 2016) (citation omitted). "In assessing Appellant's sufficiency challenge, we must determine whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences

---

[10] We have re-numbered the issues for ease of disposition.

[11] Contrary to the trial court contention, there is no need to preserve a challenge to the sufficiency of the evidence prior to filing a concise statement. **See** Pa.R.Crim.P. 606 cmt. ("The defendant may also raise [a challenge the sufficiency of the evidence] for the first time on appeal under [Pennsylvania Rule of Criminal Procedure 606](A)(7).").

therefrom, the trier of fact could have found that the Commonwealth proved [each] element of the crime beyond a reasonable doubt." ***Commonwealth v. Ansell***, 143 A.3d 944, 949 (Pa. Super. 2016) (citation omitted). "The evidence need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented." ***Commonwealth v. Ford***, 141 A.3d 547, 552 (Pa. Super. 2016) (citation omitted).

Appellant argues that there was insufficient evidence to convict him of first-degree murder. In order to convict a defendant of first-degree murder, "the Commonwealth must [] demonstrate[] that[ ] a human being was unlawfully killed, the defendant perpetrated the killing, and the defendant acted with malice and a specific intent to kill." ***Commonwealth v. Ovalles***, 144 A.3d 957, 969 (Pa. Super. 2016) (internal quotation marks and citation omitted).

Appellant only challenges the sufficiency of the evidence relating to the elements of malice and specific intent.[12] As our Supreme Court has

---

[12] In the argument portion of his brief, Appellant also argues that the Commonwealth failed to disprove his self-defense theory beyond a reasonable doubt. ***Cf. Commonwealth v. Rivera***, 108 A.3d 779, 791 n.7 (Pa. 2014) (citation omitted) ("[T]he burden is upon the Commonwealth to prove beyond a reasonable doubt that the defendant was not acting in self-defense."). This argument is waived because it was not included in the statement of questions involved section of his brief. ***See*** Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby.").

*(Footnote Continued Next Page)*

repeatedly held, a jury may properly infer malice and specific intent from the fact that a victim was shot multiple times. *See Commonwealth v. Chamberlain*, 30 A.3d 381, 394 (Pa. 2011) (citations omitted) (malice); *Commonwealth v. Hughes*, 865 A.2d 761, 793 (Pa. 2004) (specific intent). As noted above, Appellant shot Anderson multiple times. Thus, the evidence was sufficient to convict Appellant of first-degree murder.

Appellant's second, third, and fourth issues challenge the trial court's evidentiary rulings. We review the trial court's evidentiary rulings for an abuse of discretion. *Commonwealth v. Tyack*, 128 A.3d 254, 257 (Pa. Super. 2015) (citation omitted).

In his second issue, Appellant argues that the trial court erred by allowing Officer Davis to offer a lay opinion that the door was slightly open when Appellant shot Anderson. Officer Davis, a member of the crime scene unit of the Philadelphia Police Department, testified that she placed rods in the bullet holes of the door. She testified that the only logical conclusion based upon the bullet trajectories, as determined by the rods placed in the

_(Footnote Continued)_ ———————————

Moreover, even if we were to reach the merits of this argument, Appellant would not be entitled to relief. Brooks-Mapp and Hines testified that Appellant did not shoot Anderson in self-defense. *See* N.T. 2/11/15, 66-68, 119; 2/12/15, 11. Furthermore, the circumstances surrounding Anderson's murder weigh heavily against self-defense. Harris threatened to kill Anderson earlier in the day. Appellant and Harris then traveled to Anderson's apartment and shot him multiple times while he was standing in the foyer of his apartment. This direct and circumstantial evidence was sufficient to disprove Appellant's self-defense theory beyond a reasonable doubt.

bullet holes, was that the door was slightly ajar when Appellant shot Anderson. As the Commonwealth did not designate Officer Davis as an expert witness, Appellant moved *in limine* prior to trial to bar this lay opinion testimony. The trial court denied the motion and permitted Officer Davis' testimony during trial.

Lay opinion testimony is governed by Pennsylvania Rule of Evidence 701, which provides that:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> (a) rationally based on the witness['] perception;
>
> (b) helpful to clearly understanding the witness['] testimony or to determining a fact in issue; and
>
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Pa.R.Evid. 701.

Appellant argues that this case is governed by ***Commonwealth v. Serge***, 896 A.2d 1170 (Pa. 2006). According to Appellant, ***Serge*** stands for the proposition that "[c]rime scene recreation has been thoroughly discussed as requiring expert testimony." Appellant's Brief at 10. This, however, is a misreading of our Supreme Court's decision. ***Serge*** did not discuss whether lay opinion testimony regarding crime scene recreation was admissible under Rule 701 or whether it required expert testimony under Rule 702. Instead, ***Serge*** addressed the question of whether an expert was permitted to use a computer-generated animation when testifying under Rule 702. ***See Serge***,

896 A.2d at 1173. Moreover, **Serge** examined complex crime scene reconstruction using a computer-generated animation. This is different than the situation here which involved simple testimony regarding bullet trajectory gathered as a result of sticking rods in bullet holes.

The other case cited by Appellant is likewise factually dissimilar from the case at bar. In **Commonwealth v Duffey**, 548 A.2d 1178 (Pa. 1988), a non-expert former police officer

> testified that he was able to detect 'high speed splatter' of blood when a victim is stabbed in a frenzy; and that the absence of blood stains above a certain height on the bathroom wall where the victim was stabbed indicated the absence of 'high speed splatter.' From this he concluded that the victim was stabbed in a slow and deliberate manner.

**Id.** at 1186. The defendant objected to this testimony and the trial court overruled the objection. On appeal, our Supreme Court held that this was an error as the officer's testimony exceeded the permissible scope of lay opinion testimony under Rule 701 and fell within the domain of expert testimony under Rule 702. **See id.**

Opinions regarding blood spatter and the specific height that blood would reach during a violent attack are not easily reached based the witness' perception. **See** Pa.R.Evid. 701(a). Instead, technical and scientific knowledge about physiological parameters and the mechanics of blood spatter are required for such testimony. **See** Pa.R.Evid. 701(c). Furthermore, such blood spatter testimony required the officer to know what type of stab wounds are capable of causing blood to exit the body at those

velocities. **See id.** Contrast that to the type of bullet trajectory testimony offered by Officer Davis in this case. Any individual could place a rod in a bullet hole and discern which direction the bullet traveled. Thus, the blood spatter testimony in **Duffey** is factually dissimilar to the type of bullet trajectory testimony offered by Officer Davis in the case *sub judice*.

As to the question presented in this appeal, we are unaware of any Pennsylvania cases that address whether bullet trajectory testimony is admissible under Rule 701 or requires expert testimony under Rule 702. We thus examine how courts in other jurisdictions have treated such bullet trajectory evidence under similar (if not identical) rules of evidence. **Cf. In re N.M.**, 141 A.3d 539, 544 (Pa. Super. 2016) (decisions from other jurisdictions are persuasive).

We find persuasive the United States Court of Appeals for the Fourth Circuit's decision in **United States v. Beckford**, 211 F.3d 1266 (table), 2000 WL 376155 (4th Cir. 2000) (*per curiam*). Similar to the case at bar, in **Beckford** "one of the investigating detectives inserted a pencil into bullet holes found in the [] apartment to ascertain the angle of the bullet path. From this and crime scene photographs, the government created a computer-generated diagram which utilized red lines to trace the bullet path suggested by the pencil angle." **Id.** at *6. The defendant objected to this evidence arguing that the detective's use of a pencil in the bullet holes and photographs of the crime scene required specialized knowledge within the

- 10 -

scope of Federal Rule of Evidence 702. The district court overruled the defendant's objection and the Fourth Circuit affirmed, holding that "the district court reasonably concluded that the detective's testimony concerning his findings, as aided by the diagram, was rationally based on his perceptions and helpful to a clear understanding of his investigation and observations." *Id.*

The case at bar is similar in that a police officer with the crime scene unit used rods through the bullet holes in the door and evidence inside the foyer to opine that the door was partially ajar when Appellant shot Anderson. In other words, in both *Beckford* and the case at bar, the crime scene officers used rod-like objects inserted into the bullet holes to estimate bullet trajectory. Although in *Beckford* the prosecution supplemented this testimony with a computer-generated diagram, this diagram was based solely upon the pencil placed in the bullet holes and photographs of the crime scene. In other words, the diagrams were just aids for the jury to visualize the officer's testimony. The Fourth Circuit concluded that such reliance, by a crime scene officer, was "rationally based on the witness'[] perception." Fed.R.Evid. 701(a); *see* Pa.R.Evid. 701(a). We ascertain no reason why the use of virtually identical perceptions in the present case should lead to a different result.

The Colorado Court of Appeals, Division II confronted a similar issue in *Colorado v. Caldwell*, 43 P.3d 663 (Colo. App. 2001). In that case,

> a former police officer, employed as a crime scene technician at the time of the shooting, testified that after the shooting, he photographed and collected evidence from the deputy's patrol car. He also testified about the appearance and location of the two bullet holes on the outside of the car, the hole inside the car, and the dimpling of the metal inside the car. From his own observations and the use of a dowel and string, the technician testified that he tracked the paths of the two bullets[.]

*Id.* at 667. The defendant objected to this testimony arguing that the former police officer's testimony required an expert opinion and was not admissible as lay opinion testimony. The trial court overruled the objection and the defendant appealed.

The appellate court held that the trial court did not abuse its discretion by permitting the former police officer to offer lay opinion testimony under Colorado Rule of Evidence 701. It reasoned that the former police officer's testimony

> included only his observations about the entry locations of the bullets and the path they traveled inside the vehicle. Such observations could just as easily have been made by the jury from the photographs. No special expertise is required to look at the hole made by the bullet and realize that it followed a straight-line path.

*Id.* (citation omitted).

Although the former police officer's testimony in *Caldwell* dealt with bullet trajectory inside of a vehicle instead of through a door, we again see no reason that the same rationale should not apply in the case at bar. As in *Caldwell*, Officer Davis used rods to determine the path of the bullets through the door and opined, based upon the bullets' trajectory and physical

evidence she found inside of the foyer, whether the door was open or closed at the time Appellant shot Anderson.

The Special Court of Appeals of Maryland has reached the same conclusion. In **Prince v. Maryland**, 85 A.3d 334 (Md. Ct. Spec. App. 2014), a police officer "examined [the victim's] car . . . and, as part of his examination, placed 'trajectory rods' through the bullet holes in the car and photographed the rods in place." **Id.** at 339. At trial, the officer then testified regarding the trajectory of the bullets as shown by the trajectory rods in the pictures. On appeal, the defendant argued that this testimony was inadmissible under Maryland's version of Rule 701. The defendant argued the evidence was solely within the purview of expert witnesses. The appellate court rejected this argument. It reasoned that "[a] police officer who does nothing more than observe the path of the bullet and place trajectory rods (in the same manner as any layman could) need not qualify as an expert to describe that process." **Id.** at 348 (emphasis removed).

The situation in **Prince** is once again similar to the case *sub judice*. Although **Prince** dealt with trajectory rods placed in a vehicle instead of a door, the essence of Officer Davis' testimony and the officer's testimony in **Prince** is the same. In both cases, the officers used rods placed in bullet holes to determine the trajectory of the bullets – the same action a layman would take if examining the scene of a shooting. The officers in both **Prince**

and this case then relayed their findings, and opinions based thereon, to the jury.

The idea of lay opinion testimony regarding bullet trajectory is not new. In **United States v. Pierson**, 503 F.2d 173 (D.C. Cir. 1974), the United States Court of Appeals for the District of Columbia Circuit was presented with the question of "whether the district court abused its discretion in permitting [a police officer] to testify regarding the direction from which the bullet hole in the wall was fired." **Id.** at 175. The defendant objected to the admission of this lay opinion testimony and the district court overruled the objection. The District of Columbia Circuit "agree[d] with the district [court] that a layman, under certain circumstances can look at a bullet hole in a wall and see whether it appears to come from one direction or another. No special expertise is required." **Id.** at 176 (internal quotation marks omitted). The court further reasoned that:

> In giving his opinion, [the officer] was merely relating impressions resulting from his observation of the hole in the wall. By indicating the direction from which he thought the bullet was fired, he probably gave the jurors a clearer conception of the nature of the bullet hole than had he attempted to describe the features of the hole. Having observed the bullet hole itself, he would be better qualified than the jury to draw a conclusion regarding the direction from which the bullet was fired.

**Id.** at 176-177.

The testimony by the officer in **Pierson** was more questionable than Officer Davis' testimony in this case. The officer in **Pierson** did not insert

- 14 -

rods into the bullet holes to determine the trajectory of the bullets. Instead, he merely used the contour of the bullet holes to determine the bullets' trajectory. This requires more specialized knowledge than placing a rod in a hole and then looking at the location the rod points. Thus, we ascertain no reason why, if the officer's testimony in **Pierson** was admissible under the common law predecessor to Federal Rule of Evidence 701, Officer Davis' testimony should be inadmissible in this case.[13]

We acknowledge prior case law from other jurisdictions that appears to require expert testimony to establish bullet trajectory. Careful examination of these cases, however, shows that they are factually and/or legally distinct from the situations presented in **Beckford**, **Caldwell**, **Prince**, **Pierson**, and the case *sub judice*. We therefore decline to hold that they are persuasive with respect to the issue raised herein.

For example, in **McGrath v. Tavares**, 757 F.3d 20 (1st Cir. 2014), the United States Court of Appeals for the First Circuit held that photographs of bullet holes in a windshield were insufficient, without expert testimony, to prove that police shot through the windshield at an angle. **See id.** at 26-27.

---

[13] Federal Rule of Evidence 701 was proposed in 1972 and that proposal was pending before Congress when **Pierson** was decided. **See** Federal Rules of Evidence, H.R. 5463, 93rd Cong. (as passed by House, Feb. 6, 1974). Thus, although **Pierson** was decided based upon federal common law, the pending rules proposal played a role in the District of Columbia Circuit's interpretation of that common law. This is evidenced by its citation to McCormick on Evidence, § 11 (1972). In that section, McCormick *de facto* cited to proposed Rule 701. **See id.** at p.25, n.32.

Noticeably absent from *McGrath* is any discussion of whether lay opinion testimony from a crime scene officer is admissible under Federal Rule of Evidence 701. Instead, in *McGrath* the plaintiff relied solely upon photographs of the bullet riddled windshield. Furthermore, the photographs did not include rods through the bullet holes to show their trajectory. The only testimony in *McGrath* was from a defense expert witness who stated that the bullet trajectories could not be determined based upon the photographic evidence. *See id.* at 27. Thus, although *McGrath* held that expert testimony is required for proof of bullet trajectory, it did so in a fact-specific context not present in the instant case.

Also, in *Hathaway v. Bazany*, 507 F.3d 312 (5th Cir. 2007), the United States Court of Appeals for the Fifth Circuit held that a police officer's assurances that his law enforcement experience rendered him capable of offering an expert opinion regarding bullet trajectory were insufficient under Federal Rule of Evidence 702. *Id.* at 318. Again, as in *McGrath*, *Hathaway* did not discuss whether a crime scene unit member can offer lay opinion testimony under Federal Rule of Evidence 701. Instead, because of the procedural posture of the case, the Fifth Circuit in *Hathaway* focused on whether the police officer's methodology was sufficient to satisfy the expert witness requirements of Rule 702. Moreover, in *Hathaway* the bullet holes in question were not in a door or windshield, instead they were in a human body. *See id.* The main focus of the police officer's testimony was on the

location of the shell casings and the lack of bullet holes in certain parts of the subject vehicle. *See id.* Finally, like in **McGrath**, there were no rods or sticks placed through the bullet holes in **Hathaway**. Thus, **Hathaway** is both legally and factually dissimilar to the case *sub judice*.

The four cases most factually and legally similar to the case at bar, **Beckford**, **Caldwell**, **Prince**, and **Pierson**, held that the lay opinion testimony as to bullet trajectory was admissible under analogues to Pennsylvania Rule of Evidence 701. We find the rationale in these four cases all compelling for the reasons set forth above. Moreover, as discussed above, **McGrath** and **Hathaway** are legally and factually distinguishable from the situation presented in this case.

Appellant points to various testimony and evidence that an expert could have provided if called at trial and why that testimony and evidence is superior to that provided by Officer Davis. For example, he avers that an expert witness from the Philadelphia Police Department's Firearms Identification Unit could have used the EVI-PAQ Laser Trajectory Kit in order to offer more precise trajectory testimony. These arguments, however, do not go to the admissibility of Officer Davis' testimony. Instead, they go to the weight of the evidence. *Cf. Commonwealth v. Blasioli*, 713 A.2d 1117, 1123 n.15 (Pa. 1998) (argument that Pennsylvania State Police could have used a larger database when conducting DNA testing goes to the weight of the evidence and not to its admissibility). Accordingly, we hold

that the trial court did not abuse its discretion in admitting Officer Davis' lay opinion testimony over Appellant's objection.

In his third issue, Appellant argues that the trial court erred by sustaining the Commonwealth's objection to the admission of photographs of buildings surrounding the crime scene. This argument is waived. The photographs Appellant argues were improperly excluded by the trial court are not included in the certified record. The only description of the photographs is in Appellant's brief before this Court. It is well-settled, however, that "this Court may consider only the facts that have been duly certified in the record when deciding an appeal." **PHH Mortgage Corp. v. Powell**, 100 A.3d 611, 614 (Pa. Super. 2014), *citing* Pa.R.A.P. 1921 Note. Moreover, "it is Appellant's responsibility to ensure that this Court has the complete record necessary to properly review a claim." **Commonwealth v. Tucker**, 143 A.3d 955, 963 (Pa. Super. 2016) (internal quotation marks and citation omitted).

In **Commonwealth v. Petroll**, 696 A.2d 817 (Pa. Super. 1997), *aff'd*, 738 A.2d 993 (Pa. 1999), the defendant argued that the trial court erred by failing to sustain his objection to the admission of photographs. This Court found the issue waived because of the defendant's failure to ensure the photographs were included in the certified record. **See id.** at 836. Similarly, in **Commonwealth v. Lassen**, 659 A.2d 999 (Pa. Super. 1995), *abrogated on other grounds*, **Commonwealth v. Stultz**, 114 A.3d 865, 882

(Pa. Super. 2015), the defendant argued that the trial court erred by admitting photographs of the victim's injuries. This Court found the issue waived because the defendant failed to include the photographs in the certified record. **See id.** at 1008. "In this case, Appellant has failed to provide the necessary [photographs] for review. Because our review of the issue is dependent upon materials that are not provided in the certified record, we cannot consider this claim. Thus, this claim is waived." **Commonwealth v. Scassera**, 965 A.2d 247, 249 (Pa. Super. 2009), *appeal denied*, 985 A.2d 219 (Pa. 2009).[14]

In his fourth issue, Appellant argues that the trial court erred by precluding testimony regarding his character trait of honesty. Appellant argues that his trait of being honest was admissible pursuant to Pennsylvania Rule of Evidence 404(a)(2)(A), which provides that "a defendant may offer evidence of the defendant's pertinent trait[.]" Pa.R.Evid. 404(A)(2)(A). Appellant argues that evidence of honesty was

---

[14] To the extent that Appellant argues that the actual photographs are unnecessary for our review of his claim, we reject this argument. It is well-settled that this Court may affirm a trial court's ruling on any basis. **See In re A.G.C.**, 142 A.3d 102, 110 n.6 (Pa. Super. 2016) (citation omitted). It is impossible to determine if the photographs were inadmissible under another rule without the photographs in question. Appellant's omission of the photographs from the certified record thereby hampers appellate review. Thus, even if the trial court sustained the Commonwealth's objection under Pennsylvania Rule of Criminal Procedure 573, and it is unclear from the record if that was the basis for the trial court's ruling, N.T., 2/11/15, at 154, Appellant was required to ensure the photographs were included in the certified record.

pertinent because the case against him essentially tested whether his self-defense testimony was truthful or whether Hines' and Brooks-Mapp's testimony was truthful. The Commonwealth, on the other hand, argues that Appellant's character evidence was barred by Pennsylvania Rule of Evidence 608, which provides that "evidence of [a witness'] truthful character is admissible only after the witness['] character for truthfulness has been attacked." Pa.R.Evid. 608(a).

In support of his argument, Appellant cites **Commonwealth v. Harris**, 785 A.2d 998 (Pa. Super. 2001). In **Harris**, this Court stated that "in a case where there are only two direct witnesses involved, credibility of the witnesses is of paramount importance, and character evidence is critical to the jury's determination of credibility." **Id.** at 1000, *citing* **Commonwealth v. Weiss**, 606 A.2d 439, 442 (Pa. 1992). Appellant argues that **Harris** and **Weiss** apply in this case because there were only three witnesses to Anderson's murder – Hines, Brooks-Mapp, and himself. He contends that this case depended upon whether the jury believed Hines' and Brooks-Mapp's account of the shooting, in which Appellant did not act in self-defense, or believed Appellant's account of the shooting, in which he acted in self-defense.

We reject this argument because **Harris** and **Weis** did not address the right of an accused, who testifies on his or her own behalf, to call witnesses to testify as to his or her truthfulness. Instead, this Court has stated that,

- 20 -

when truthfulness is not relevant to the underlying criminal offense, a defendant may only call witnesses to testify as to his or her truthfulness when (a) he or she chooses to testify on his or her own behalf, and (b) the Commonwealth attacks the defendant's truthfulness through either cross-examination or by other witness' testimony. *See Commonwealth v. Minich*, 4 A.3d 1063, 1070 (Pa. Super. 2010) (citation omitted). Thus, this Court has held that "where the prosecution has merely introduced evidence denying or contradicting the facts to which the defendant testified, but has not assailed the defendant's community reputation for truthfulness generally, evidence of the defendant's alleged reputation for truthfulness is not admissible." *Commonwealth v. Constant*, 925 A.2d 810, 823 (Pa. Super. 2007), *overruled on other grounds*, *Commonwealth v. Minnis*, 83 A.3d 1047 (Pa. Super. 2014) (*en banc*) (citation omitted) (citation omitted).

In other words, Rule 608(a) permits a testifying defendant to call witnesses to testify as to his or her truthful character whenever the Commonwealth attacks his or her general reputation for truthfulness during trial. Conversely, Rule 404(A)(2)(a) permits a defendant (testifying or non-testifying) to call witnesses to testify as to his or her truthful character when the defendant's reputation for truthfulness is pertinent to the underlying criminal offense, *e.g*, perjury. In this case, Appellant does not argue that the Commonwealth attacked his general reputation for truthfulness and our review of the record reveals no such attack on his general reputation for

honesty. Thus, Appellant was not entitled to call witnesses to testify to his truthfulness under Rule 608(a).

As Appellant was not entitled to call witnesses to testify as to his truthfulness under Rule 608(a), we turn to whether Appellant was entitled to call witnesses to testify as to his truthfulness under Rule 404(a)(2)(A). In that respect, we find instructive our Supreme Court's decision in ***Commonwealth v. Puksar***, 951 A.2d 267 (Pa. 2008). In that case, the defendant argued that his trial counsel was ineffective for failing to call a character witness to testify regarding his trait of honesty. Our Supreme Court stated that "evidence of one's reputation for honesty would have been irrelevant in a murder prosecution, since murder does not implicate the character trait of honesty." ***Id.*** at 281 n.7. Similarly, this Court has stated that, "[i]t is irrelevant to show the defendant's reputation . . . for honesty and integrity in a murder prosecution[.]" ***Commonwealth v. Fawcett***, 443 A.2d 1172, 1175 n.3 (Pa. Super. 1982) (internal quotation marks and citation omitted). Appellant was therefore not entitled to call witnesses to testify as to his character under Rule 404(a)(2)(A). Accordingly, the trial court did not err by sustaining the Commonwealth's objection to this character evidence.

In his final issue, Appellant challenges the weight of the evidence. This argument is waived. "A weight of the evidence claim must be preserved either in a post-sentence motion, by a written motion before

- 22 -

sentencing, or orally prior to sentencing." ***Commonwealth v. Thompson***, 93 A.3d 478, 490 (Pa. Super. 2014) (internal alteration and citations omitted). In this case, Appellant did not file a post-sentence motion or a written motion prior to sentencing. Moreover, Appellant did not preserve the issue orally prior to sentencing. ***See*** N.T., 2/20/15, at 11-13. Accordingly, Appellant has waived his challenge to the weight of the evidence.

In sum, we hold that the trial court did not abuse its discretion in admitting Officer Davis' lay opinion testimony as it related to bullet trajectory. The trial court properly sustained the Commonwealth's objection to witnesses testifying about Appellant's truthfulness as Appellant was not entitled to call such witnesses under Rule 404(a)(2)(A) or Rule 608(a). As we also conclude Appellant is not entitled to relief on his remaining claims of error, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/6/2016