J-A29014-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RAMON M. MORALES | : | |
| | : | |
| Appellant | : | No. 3084 EDA 2017 |

Appeal from the Judgment of Sentence July 25, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0005264-2016

BEFORE:   OTT, J., DUBOW, J., and STEVENS[*], P.J.E.

MEMORANDUM BY OTT, J.:                    **FILED MARCH 26, 2019**

Ramon M. Morales appeals from the judgment of sentence imposed on July 25, 2017, in the Court of Common Pleas of Philadelphia County, following his conviction by jury on the charges of Accidents Involving Death or Personal Injury – Leaving the Scene, Homicide by Vehicle, and Involuntary Manslaughter.[1]  Morales received an aggregate sentence of five to 17 years' incarceration.  In this timely appeal,[2] Morales claims there was insufficient

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 75 Pa.C.S. §§ 3742(a), 3732(a), and 18 Pa.C.S. § 2504(a), respectively. The jury acquitted Morales of 3rd Degree Murder, 18 Pa.C.S. § 2502.

[2] After being granted several extensions of time to file the Pa.R.A.P. 1925(b) statement, counsel for Morales filed the document five days late.  However, the trial court addressed the merits of the issues in its Trial Court Opinion. Accordingly, we may address the merits of the appeal.  ***Commonwealth v. Burton***, 973 A.2d 428, 433 (Pa. Super. 2009) (*en banc*) ([I]f there has been

evidence to support his convictions on Homicide by Vehicle and Involuntary Manslaughter, and those convictions were also against the weight of the evidence.[3] After a thorough review of the submissions by the parties, relevant law, and the certified record, we affirm.

We rely upon the trial court's extensive factual recitation found at pages 4-14 of the January 30, 2018, Pa.R.A.P. 1925(a) opinion. However, for context, we highlight the following facts.

The victim, Thomas Dunbar, was killed in a hit and run incident on April 13, 2016, at the intersection of Aramingo and Lehigh Avenues in Philadelphia, Pennsylvania. Dunbar was driving a Vespa scooter at the time of the incident. He was stopped on Aramingo Avenue, waiting to make a right hand turn onto Lehigh Avenue. His lights were on.

Ramon Morales was driving a Pontiac Aztek when he attempted to make a right hand turn from Aramingo Avenue onto Lehigh Avenue. The front passenger side bumper of the Aztek struck the scooter, knocking Dunbar to the ground. Because of the positioning of the vehicles, no witness actually saw the impact between the Aztek and the scooter, although witnesses testified at trial they heard the impact between the Aztek and the scooter.

_____

an untimely filing [of a 1925(b) statement], this Court may decide the appeal on the merits if the trial court had adequate opportunity to prepare an opinion addressing the issues being raised on appeal.)

[3] Morales does not challenge his conviction on Accidents Involving Death or Personal Injury.

Dunbar became trapped under the Aztek as it continued through the turn onto Lehigh Avenue. Dunbar was dragged under the vehicle for at least 239 feet.

A number of witnesses attempted to catch Morales' attention as he dragged Dunbar. Morales stopped his car, put it into reverse, dislodging Dunbar and backing over him in the process. Morales then left the scene travelling at approximately 40-50 miles per hour. One witness to the incident followed Morales, finally confronting him. The witness told Morales he had to return to the scene because he had hit someone. Morales replied he would turn himself in the next day.

The witness who followed Morales returned to the scene of the accident and gave the police the license tag number of the Aztek. Police found the car shortly thereafter and attempted to contact the people who lived at the address where the car was parked and registered. The police noticed the curtains moving when they knocked on the door, but no one responded. The police obtained an arrest warrant for Morales and served it the following day. Morales' suitcases were on his bed and packed when the police arrived. The police later learned that Morales had asked someone to watch his dogs because he was going to be away.

Morales' first claim is that there was insufficient evidence to support his convictions on homicide by vehicle and involuntary manslaughter. Specifically, both crimes require a *mens rea* of recklessness or gross negligence. Morales argues the evidence produced at trial demonstrates

nothing more than mere negligence. Accordingly, Morales contends Thomas Dunbar's death was a tragic accident, but was not criminal.

In relevant part, the statute addressing homicide by vehicle states:

**(a) Offense.--**Any person who recklessly or with gross negligence causes the death of another person while engaged in the violation of any law of this Commonwealth or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic except section 3802 (relating to driving under influence of alcohol or controlled substance) is guilty of homicide by vehicle, a felony of the third degree, when the violation is the cause of death.

75 Pa.C.S. § 3732(a).

The statute addressing involuntary manslaughter states:

**(a) General rule.--**A person is guilty of involuntary manslaughter when as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, he causes the death of another person.

18 Pa.C.S. § 2504(a).

The scope and standard of review for a challenge to the sufficiency of the evidence is well-settled.

"Whether sufficient evidence exists to support the verdict is a question of law; our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Giron***, 155 A.3d 635, 638 (Pa. Super. 2017) (citation omitted). In assessing Appellant's sufficiency challenge, we must determine "whether viewing all the evidence admitted at trial in the light most favorable to the [Commonwealth], there is sufficient evidence to enable the fact–finder to find every element of the crime beyond a reasonable doubt." ***Commonwealth v. Williams***, 153 A.3d 372, 375 (Pa. Super. 2016) (citation omitted). "The evidence need not preclude every possibility of innocence and the fact-finder is free to believe

all, part, or none of the evidence presented." ***Commonwealth v. Kennedy***, 151 A.3d 1117, 1121 (Pa. Super. 2016) (citation omitted).

***Commonwealth v. Hutchinson***, 164 A.3d 494, 497 (Pa. Super. 2017).

The trial court accurately analyzed Morales' claims:

18 Pa.C.S. § 2504(a) defines "Involuntary Manslaughter" as follows: "a person is guilty of involuntary manslaughter when as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, he causes the death of another person."

"Recklessness and gross negligence are no longer treated as disparate mental states for the crimes charged; but, rather, gross negligence is encompassed by recklessness." ***Com. v. Martinez***, 2017 WL 1163045, citing ***Com. v. Grimes***, 842 A.2d 432, 434 (Pa. Super. 2004) (*citing* ***Commonwealth v. Higgins***, 575 Pa. 395, 836 A.2d 862 (2003)). Section 302, which pertains to the "General requirements of culpability," states that:

> []A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.[]

18 Pa.C.S.A. § 302(b)(3).

To be convicted of 'Homicide by Vehicle,' the Defendant must be engaged in the violation of any law of this Commonwealth or municipal ordinance applying to the operation or use of a vehicle or the regulation of traffic when recklessly or with gross negligence causing the death of another. The Defendant in the instant matter was in violation of 75 Pa.C.S. § 3323(c) and 75 Pa.C.S. § 3736(a) of the Pennsylvania Motor Vehicle Code.

75 Pa.C.S. § 3323(c) states the following:

> **"The driver of a vehicle approaching a yield sign shall in obedience to the sign slow down to a speed reasonable for the existing conditions and, if required for safety to stop, shall stop before entering a crosswalk on the near side of the intersection or, if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering. After slowing down or stopping, the driver shall yield the right-of-way to any vehicle in the intersection or approaching on another roadway so closely as to constitute a hazard during the time the driver is moving across or within the intersection of roadways. If a driver is involved in a collision with a vehicle in the intersection or junction of roadways after driving past a yield sign, the collision shall be deemed prima facie evidence of failure of the driver to yield the right-of-way."**

75 Pa.C.S. § 3736(a) states the following:

> **"Any person who drives any vehicle in willful or wanton disregard for the safety of persons or property is guilty of reckless driving."**

The jury found that there was sufficient evidence to support the charge of 'Homicide by Vehicle.' Police Officer Hughes, from the Accident Investigation Division, testified that he is an expert in accident reconstruction and investigated the scene of this incident. He opined that the front-right bumper of the Defendant's vehicle struck the decedent's scooter from behind as the scooter was stopped at a yield sign. The impact ejected the decedent off of the scooter and under the Defendant's vehicle. Thereafter, the Defendant continued driving with the decedent's body lodged under his vehicle for two-hundred-and-thirty-nine (239) feet. Other witnesses testified that the Defendant continued driving with the decedent's body lodged under his vehicle despite multiple horns blaring and witnesses screaming for the Defendant to stop. When the Defendant finally stopped his vehicle, it was only to reverse it to dislodge the decedent's body and then proceed forward, crushing the decedent as he fled the scene. Dr. Brown testified that virtually all of the decedent's ribs had been broken, which is indicative of being crushed. The broken ribs lacerated

the decedent's liver and lungs, which would have resulted in his death. The skin on the decedent's arm and hand was worn through to the bone as a result of being dragged such a distance. It strains credulity that one could find that the Defendant was unaware of the presence of the body of a five (5) foot, ten (10) inch man, weighing one-hundred-and eighty-eight (188) pounds, underneath his vehicle for two-hundred-and-thirty-nine (239) feet. Furthermore, the Defendant can no longer feign ignorance once he is approached by Efrain Diaz and told that he had hit someone, yet flees again. Such conduct by the Defendant was clearly a violation of both 75 Pa.C.S. § 3323(c) and 75 Pa.C.S. § 3736(a) and constituted the *mens rea* of recklessness sufficient to sustain the conviction of 'Homicide by Vehicle.'

As to the conviction for 'Involuntary Manslaughter,' the same analysis applies. The defendant's conduct was the direct cause of the decedent's death and was most certainly reckless, showing a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

Trial Court Opinion, 1/30/2018, at 16-18 (bold in original).

Additionally, while arresting Morales the next day, officers observed, at his residence, a suitcase, passport and a notation regarding a flight on JetBlue. A friend testified that Morales asked her to take care of his dog as he was going on a trip. It is well-settled that "flight can constitute circumstantial evidence of consciousness of guilt." **Commonwealth v. Housman**, 986 A.2d 822, 931 (Pa. 2009) (distinguished on other grounds).

In light of the foregoing, we agree with the trial court there was sufficient evidence to prove beyond a reasonable doubt that Morales possessed the requisite *mens rea* to have committed both involuntary manslaughter and homicide by vehicle and that his actions constituted more than mere negligence.

Morales' next claim is that the guilty verdicts on the charges of involuntary manslaughter and homicide by vehicle were against the weight of the evidence. A challenge to the weight of the evidence must be raised either orally, any time prior to sentencing; by written motion, prior to sentencing; or in a post-sentence motion. ***See*** Pa.R.Crim.P. 607(A)(1)-(3). ***See also Commonwealth v. Bryant***, 57 A.3d 191, 196 (Pa. Super. 2012) (Failure to challenge the weight of the evidence presented at trial in an oral or written motion prior to sentencing or in a post-sentence motion will result in waiver of the claim.). Morales did not abide by Rule 607; therefore, he has waived this issue.

Accordingly, Morales is not entitled to relief on this claim.

Judgment of sentence affirmed. Morales' Application for Leave to Present the within Post-Submission Argument is granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/26/19

- 8 -