IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-431

Filed 21 May 2025

Guilford County, No. 17 CRS 90566

STATE OF NORTH CAROLINA

v.

J'MAL RASHAD TOWNSEND

Appeal by Defendant from Judgment entered 28 December 2022 by Judge

Michael D. Duncan in Guilford County Superior Court. Heard in the Court of Appeals

25 February 2025.

*Attorney General Jeff Jackson, by Special Deputy Attorney General Zachary K. Dunn, for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender Brandon Mayes, for Defendant-Appellant.*

HAMPSON, Judge.

## **Factual and Procedural Background**

J'Mal Rashad Townsend (Defendant) appeals from a Judgment entered upon

a jury verdict finding him guilty of Second-Degree Murder. The Record before us,

including evidence presented at trial, tends to reflect the following:

On 3 October 2017, Brandon Frye, the victim in this case, received a phone call

informing him someone was "on the way" to buy marijuana from him. Frye was in

his apartment with his roommate, Nolan Clarke. Frye then went to the kitchen to

weigh an ounce of marijuana for sale. Frye answered a knock at the door and Defendant entered the apartment. Defendant asked Frye if he could buy more than the one ounce of marijuana Frye had prepared. Frye went to prepare another ounce, and Defendant left the apartment to get more money.

During this exchange, Clarke also left the apartment through the back door to take their dog out. While outside, Clarke "heard multiple gun shots" fired "in rapid succession." Clarke entered the apartment and heard Frye "in the bathroom moaning" and saw "dust from a bullet that went through the wall." Clarke observed the front door was open, found Frye injured in the bathroom, and called 911. First responders attempted to render aid, but they were unable to revive Frye. It was later determined Frye died of a gunshot wound to the chest.

Detective Jarrod Waddell of the Greensboro Police Department investigated the scene. Detective Waddell used dowel rods placed in the bullet holes to determine the trajectory of the gunshots.

Defendant was indicted for First-Degree Murder and Robbery with a Dangerous Weapon in connection with this incident on 22 January 2018. This matter came on for trial on 28 November 2022. At trial, Detective Waddell testified about his investigation and specifically about certain bullet holes and the trajectories of the bullets that caused them. The State repeatedly questioned Detective Waddell about the "significance" of different photographs of bullet holes from the crime scene. In one such exchange, for example, the State asked about State's Exhibit 118—a

photograph from the scene.  Detective Waddell explained:

> [Detective Waddell]: That is the dowel rod with the through and through of the front door from the perspective inside the hallway you can see where it creates an angle as it[']s coming from the bathroom from the right side to the left to the closet door.
>
> [The State]: All right.  So the door was in – is this door lined up if we were to do a – if you were to do a line?
>
> [Detective Waddell]: Yes, our – our attempt was to position the door wherever the door had been at what position of open would it have been, our closest proximity to open to achieve that angle.

Detective Waddell acknowledged he is not an expert in ballistics nor bullet trajectory. Counsel for Defendant objected repeatedly to Detective Waddell's testimony regarding the trajectory of the bullets on the basis that he is not an expert in projectiles or ballistics.  The trial court overruled these objections, stating: "Ladies and gentlemen, the Court is going to allow this individual to testify.  He's not been qualified as an expert witness, but based upon his training and experience he may be able to give some explanation, some testimony of these photographs."

During the charge conference, the parties and trial court discussed a possible self-defense instruction at length.  The parties specifically discussed the North Carolina Supreme Court's holding in *State v. McLymore*, 380 N.C. 185, 868 S.E.2d 67 (2022) and its impact on the State's burden of proof with respect to self-defense. Defense counsel ultimately agreed with the jury instruction on self-defense as the trial court gave it, which included an instruction self-defense is not available to a person "who used defensive force and who was attempting to commit or committing

a felony." The trial court further instructed the jury the State must prove "an immediate causal nexus between the Defendant's use of force and felony conduct used to disqualify the Defendant from use of defensive force." The trial court also informed the jury, among other things, that attempting to possess two ounces of marijuana and attempting to possess any amount of marijuana with the intent to sell or deliver are felonies.

On 8 December 2022, the jury returned a verdict finding Defendant not guilty of Robbery with a Dangerous Weapon and First-Degree Murder; however, the jury found Defendant guilty of Second-Degree Murder. The trial court sentenced Defendant to 300 to 372 months of imprisonment. Defendant gave oral Notice of Appeal in open court on 8 December 2022.

## **Issues**

The issues on appeal are whether the trial court erred by (I) instructing the jury as to the causal nexus requirement and (II) admitting Detective Waddell's testimony; and whether (III) Detective Waddell's testimony was subject to statutory disclosure requirements.

## **Analysis**

I.    Jury Instruction

Defendant contends the trial court erred in instructing the jury on the issue of self-defense because, in his view, felony possession of marijuana could not serve as a disqualifying felony to negate his self-defense claim. We disagree.

As Defendant acknowledges, he did not object to the jury instructions at trial. Thus, our review is limited to plain error. N.C.R. App. P. 10(a)(4) (2024) ("In criminal cases, an issue that was not preserved by objection noted at trial and that is not deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error."). "For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial." *State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (citation omitted). Further, "[t]o show that an error was fundamental, a defendant must establish prejudice—that, after examination of the entire record, the error 'had a probable impact on the jury's finding that the defendant was guilty.'" *Id.* (quoting *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (citation omitted)). Thus, plain error is reserved for "the exceptional case where, after reviewing the entire record, it can be said the claimed error is a '*fundamental* error, something so basic, so prejudicial . . . that justice cannot have been done,' or 'where [the error] is grave error which amounts to a denial of a fundamental right of the accused[.]'" *Odom*, 307 N.C. at 660, 300 S.E.2d at 378 (emphasis in original) (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir. 1982)).

"The prime purpose of a court's charge to the jury is the clarification of issues, the elimination of extraneous matters, and a declaration and an application of the law arising on the evidence." *State v. Kuhns*, 260 N.C. App. 281, 284, 817 S.E.2d 828,

830 (2018) (quoting *State v. Cameron*, 284 N.C. 165, 171, 200 S.E.2d 186, 191 (1973)). Accordingly, "it is the duty of the trial court to instruct the jury on all substantial features of a case raised by the evidence." *State v. Shaw*, 322 N.C. 797, 803, 370 S.E.2d 546, 549 (1988) (citation omitted)). "Whether a jury instruction correctly explains the law is a question of law, reviewable by this Court *de novo*." *State v. Barron*, 202 N.C. App. 686, 694, 690 S.E.2d 22, 29 (2010), *disc. review denied*, 364 N.C. 327, 700 S.E.2d 926 (2010). "This Court reviews jury instructions contextually and in [their] entirety." *State v. Blizzard*, 169 N.C. App. 285, 296, 610 S.E.2d 245, 253 (2005) (citation omitted). "[A]n error in jury instructions is prejudicial and requires a new trial only if 'there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises.' " *State v. Castaneda*, 196 N.C. App. 109, 116, 674 S.E.2d 707, 712 (2009) (quoting N.C. Gen. Stat. § 15A-1443(a)).

In certain circumstances, a person "is justified in the use of deadly force and does not have a duty to retreat in any place he or she has the lawful right to be[,]" including if that person "reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself or another." N.C. Gen. Stat. § 14-51.3(a)(1) (2023). The affirmative defense of self-defense is not available, however, to a defendant who used defensive force and "[w]as attempting to commit, committing, or escaping after the commission of a felony." N.C. Gen. Stat. § 14-51.4(1) (2023). The North Carolina Supreme Court clarified in *State v. McLymore*, 380 N.C.

185, 868 S.E.2d 67 (2022), that Section 14-51.4(1) incorporates a causal nexus requirement. There, the Court held "in order to disqualify a defendant from justifying the use of force as self-defense pursuant to N.C.G.S. § 14-51.4(1), the State must prove the existence of an immediate causal nexus between the defendant's disqualifying conduct and the confrontation during which the defendant used force." *Id.* at 197, 868 S.E.2d at 77. "The State must introduce evidence that 'but for the defendant' attempting to commit, committing, or escaping after the commission of a felony, 'the confrontation resulting in injury to the victim would not have occurred.'" *Id.* at 197-98, 868 S.E.2d at 77 (quoting *Mayes v. State*, 744 N.E.2d 390 (Ind. 2001)).

During the charge conference, counsel for both parties discussed a potential self-defense instruction. After hearing arguments from both parties, the trial court gave a proposed instruction to which each side agreed.

Defendant contends there was no causal nexus between Defendant's felony possession of marijuana and the circumstances leading to Frye's death. In *McLymore*, however, our Supreme Court noted "whether or not a defendant was engaged in disqualifying conduct bearing an immediate causal nexus to the circumstances giving rise to his or her use of force" is ordinarily a jury question. 380 N.C. at 198, 868 S.E.2d at 77 (citing *Apprendi v. New Jersey*, 530 U.S. 466, 477, 120 S. Ct. 2348, 2356, 147 L. Ed. 2d 435 (2000)). Indeed, this Court has stated "Where the State introduces such evidence, the existence of a causal nexus is a jury determination[.]" *State v. Vaughn*, 293 N.C. App. 770, 777, 901 S.E.2d 260, 266 (2024).

Here, the trial court properly instructed the jury on the causal nexus requirement:

> Additionally, self-defense is not available to a person who used defensive force and who was attempting to commit or committing a felony. *The law requires an immediate causal nexus between the Defendant's use of force and felony conduct used to disqualify the Defendant from use of defensive force.* The State of North Carolina must prove beyond a reasonable doubt that the existence of an immediate causal nexus between the Defendant's disqualifying conduct, i.e., attempting to commit a felony or committing a felony, and the confrontation during which the Defendant used force. *The State must prove beyond a reasonable doubt that but for the Defendant attempting to commit or committing a felony, the confrontation resulting in the injury to the victim would not have occurred.* There would be an immediate causal nexus between the felony of robbery with a dangerous weapon and the Defendant's use of force, and therefore, the Defendant would be disqualified from using defensive force if he was committing or attempting to commit robbery with a dangerous weapon. Attempting to possess two ounces of marijuana, attempting to possess any amount of marijuana with the intent to sell or deliver are all felonies.
>
> . . . .
>
> [S]elf-defense is not available to a person who used defensive force and who was attempting to commit or committing a felony. The law in the State of North Carolina requires an immediate causal nexus between the Defendant's use of force and felony conduct used to disqualify the Defendant from the use of defensive force. The State of North Carolina must prove beyond a reasonable doubt the existence of an immediate causal nexus between the Defendant's disqualifying conduct, i.e., attempting to commit a felony or committing a felony and the confrontation during which the Defendant used force. The State must prove beyond a reasonable doubt that, but for the Defendant attempting to commit or committing a felony, the confrontation resulting in injury to the victim would not have occurred.

(emphasis added). The trial court also instructed the jury that "[a]ttempting to possess two ounces of marijuana, attempting to possess any amount of marijuana with the intent to sell or deliver are felonies."

These instructions closely follow the guidance set forth in *McLymore* regarding the causal nexus requirement, including expressly articulating the State's burden to prove but-for causation between Defendant's felonious conduct and the confrontation resulting in Frye's death. Thus, on the Record before us, the trial court's instruction on the causal nexus requirement does not rise to the level of plain error.

II.    Detective Waddell's Testimony

Generally, a trial court's evidentiary rulings are reviewed for abuse of discretion. *See State v. Tellez*, 200 N.C. App. 517, 526, 684 S.E.2d 733, 739 (2009) ("The standard of review for this Court assessing evidentiary rulings is abuse of discretion." (citations and quotation marks omitted)). However, "[w]hen the issue is whether 'the trial court's decision is based on an incorrect reading and interpretation of the rule governing admissibility of expert testimony, the standard of review on appeal is *de novo.*'" *State v. Phillips*, 268 N.C. App. 623, 634, 836 S.E.2d 866, 873 (2019) (quoting *State v. Parks*, 265 N.C. App. 555, 563, 828 S.E.2d 719, 725 (2019)). Here, Defendant contends the trial court erred in admitting portions of Detective Waddell's testimony regarding the trajectory of the bullets under Rule 701 because, in his view, Detective Waddell offered expert opinions where he had not been qualified as an expert and his testimony did not satisfy the requirements for expert

testimony under Rule of Evidence 702.

Under Rule 701, a witness may offer lay opinion testimony so long as it is "limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." N.C. Gen. Stat. § 8C-1, Rule 701 (2023). Our courts have consistently held "the testimony of an investigating officer was properly admitted at trial where it was 'based on his personal observations' and 'helpful to a clear understanding of his testimony' concerning the facts in question." *State v. Delau*, 381 N.C. 226, 237, 872 S.E.2d 41, 48 (2022) (citing *State v. Dickens*, 346 N.C. 26, 46, 484 S.E.2d 553, 564 (1997) and *State v. Lloyd*, 354 N.C. 76, 109, 552 S.E.2d 596, 620 (2001)).

Neither party has presented, nor have we found, any North Carolina case addressing whether bullet trajectory testimony is admissible under Rule 701. Thus, whether a law enforcement officer may offer lay opinion testimony on the use of dowel rods to determine bullet trajectory is a matter of first impression before this Court. In reaching our conclusion, we consider how courts in other jurisdictions have treated such bullet trajectory evidence under similar or identical rules of evidence.

Notably, the Superior Court of Pennsylvania addressed precisely this issue in *Commonwealth v. Kennedy*, 151 A.3d 1117 (Pa. Super. Ct. 2016). There, the court considered several cases with similar facts to the case before us and ultimately concluded the testimony at issue was admissible. *Id.* at 1127. First, the *Kennedy*

court identified *United States v. Beckford*, 211 F.3d 1266 (4th Cir. 2000) (per curiam) (unpublished). In *Beckford*, "one of the investigating detectives inserted a pencil into bullet holes found in the . . . apartment to ascertain the angle of the bullet path." *Id.* at *6. Based on those observations and crime scene photographs, the government created a computer-generated diagram showing red lines tracing the bullet path "suggested by the pencil angle." *Id.* The defendant objected, arguing this evidence required specialized knowledge under Federal Rule of Evidence 702.[1] The district court overruled the defendant's objection. The Fourth Circuit affirmed, stating "the district court reasonably concluded that the detective's testimony concerning his findings, as aided by the diagram, was rationally based on his perceptions and helpful to a clear understanding of his investigation and observations." *Id.*

Similarly, in *People v. Caldwell*, 43 P.3d 663 (Colo. App. 2001), the Colorado Court of Appeals addressed a case in which a former police officer, who was a crime scene technician at the time of the underlying shooting, testified about the trajectory of the bullets. There, the witness' testimony was based on "his own observations and the use of a dowel and string" to track the paths of the bullets. *Id.* at 667. As here, the defendant objected to the testimony, claiming the witness' testimony required an expert opinion, and the trial court overruled the objection. *Id.* On appeal, the court affirmed, reasoning:

> [T]he witness' testimony included only his observations about the

---

[1] Federal Rule of Evidence 702 is identical to North Carolina Rule of Evidence 702.

> entry locations of the bullets and the path they traveled inside the vehicle. Such observations could just as easily have been made by the jury from the photographs. No special expertise is required to look at the hole made by the bullet and realize that it followed a straight-line path.

*Id.* (citation omitted).

Likewise, the Special Court of Appeals of Maryland reached the same conclusion in a case where a police officer "examined [the victim]'s car . . . and, as part of his examination, placed 'trajectory rods' through the bullet holes in the car and photographed the rods in place." *Prince v. State*, 216 Md. App. 178, 186, 85 A.3d 334, 339 (2014). The defendant in that case challenged the admissibility of that evidence under Maryland's version of Rule 701, arguing the evidence was exclusively within the purview of expert witnesses. *Id.* at 198, 85 A.3d at 346. The court rejected that argument, reasoning "[a] police officer who does nothing more than observe the path of the bullet and place trajectory rods (in the same manner as any layman could) need not qualify as an expert to describe that process." *Id.* at 202, 85 A.3d at 348 (emphasis removed).

As the *Kennedy* court observed, although several courts have seemingly required expert testimony as to bullet trajectory under Rule 702, these cases are distinguishable from those above and the case at bar. For example, the First Circuit in *McGrath v. Tavares*, 757 F.3d 20 (1st Cir. 2014), concluded photographs of bullet holes in a windshield were insufficient to prove bullet trajectory absent expert testimony. There, however, there was no lay opinion testimony offered on the issues;

rather, the plaintiff relied solely upon photographs of the windshield, and the only testimony offered came from an expert witness for the defense who stated the bullet trajectories could not be determined based on the photographs in that specific case. *Id.* at 26-27. Likewise, a factually similar case arising from the Fifth Circuit, *Hathaway v. Bazany*, 507 F.3d 312 (5th Cir. 2007), did not address the question of lay opinion testimony at all. There, the issue on appeal centered on whether an officer's methodology in determining bullet trajectory was sufficient under Rule 702— not whether the testimony would be admissible under Rule 701. *Id.* at 317. And, as in *McGrath*, there were no dowel rods or other type of trajectory rod placed in the bullet holes to help determine trajectory. *Id.* at 318-19.

We are persuaded by our own reading of these cases that, based on the facts of this case, Detective Waddell's testimony was properly deemed lay opinion testimony. As in *Kennedy*, *Prince*, and *Caldwell*, Detective Waddell used dowel rods at the crime scene to help him determine the trajectory of the bullets fired. And although his testimony was based on his training and experience, "[t]he mere fact that a witness is a law enforcement officer does not automatically transform his testimony into expert testimony." *Prince,* 216 Md. App. at 201, 85 A.3d at 348. Rather, Detective Waddell's testimony was based on observation appropriate for lay opinion testimony; "[h]e conducted no experiments, made no attempts at reconstruction, and 'was not conveying information that required a specialized or scientific knowledge to understand.'" *Id.* at 202, A.3d at 348 (quoting *Caldwell*, 43 P.3d at 668). Indeed, our

caselaw recognizes a law enforcement officer may offer lay opinion testimony based on their training and experience in other contexts. *See e.g.*, *State v. Garnett*, 209 N.C. App. 537, 546, 706 S.E.2d 280, 286 (2011) (noting a law enforcement officer may testify to visual identification of marijuana based on their training and experience).

Thus, Detective Waddell's testimony was properly considered lay opinion testimony. Therefore, the trial court did not err in admitting this testimony under Rule 701.

III.    Disclosure of Detective Waddell's Testimony

Defendant contends that because, in his view, Detective Waddell's testimony was expert opinion testimony, it was subject to N.C. Gen. Stat. § 15A-903(a)(2). That statute provides, in pertinent part: "Upon motion of the defendant, the court must order . . . [t]he prosecuting attorney to give notice to the defendant of any expert witnesses that the State reasonably expects to call as a witness at trial. Each such witness shall prepare, and the State shall furnish to the defendant, a report of the results of any examinations or tests conducted by the expert." N.C. Gen. Stat. § 15A-903(a)(2) (2023). However, because we conclude Detective Waddell's testimony was lay opinion testimony, Section 15A-903(a)(2) does not apply.

Defendant points to *State v. Davis*, 368 N.C. 794, 785 S.E.2d 312 (2016), for the proposition that a witness' opinions may be expert opinions subject to Section § 15A-903(a)(2) even where this Court concludes they were not expert opinions. *Davis* is readily distinguishable. In *Davis*, the witness at issue had been "accepted without

objection as an expert" and answered questions with "opinions based on his expertise." *Id.* at 807-08, 785 S.E.2d at 320. In contrast, Detective Waddell was not qualified as an expert witness at trial and we concluded his testimony regarding the trajectory of the bullets was lay opinion testimony. Thus, the case sub judice is materially different from *Davis*. We, therefore, conclude Detective Waddell's testimony was not subject to disclosure under Section 15A-903. Consequently, the State did not violate its disclosure requirements by failing to disclose Detective Waddell's testimony.

## **Conclusion**

Accordingly, for the foregoing reasons, we conclude there was no error in Defendant's trial and affirm the Judgment.


NO ERROR.

Chief Judge DILLON and Judge FREEMAN concur.