J-S46024-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
HENRY PRATT :
:
Appellant : No. 2961 EDA 2019

Appeal from the Judgment of Sentence Entered November 5, 2015
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004759-2012

BEFORE: BENDER, P.J.E., SHOGAN, J., and MUSMANNO, J.

MEMORANDUM BY SHOGAN, J.: **FILED: FEBRUARY 26, 2021**

Appellant, Henry Pratt, appeals *nunc pro tunc* from the November 5,

2015 judgment of sentence imposed by the Philadelphia Court of Common

Pleas.[1] For the reasons that follow, we affirm.

The trial court summarized the facts of the case as follows:

[Appellant] financed a 2004 Bentley through Chase Auto
Finance (Chase), a subdivision of JP Morgan Chase Bank. June 11,
2015, N.T. at 112.

On March 5, 2009, [A]ppellant purchased an auto insurance
policy from Progressive Casualty (Progressive) for the Bentley. Id.
at 109. On March 27, 2009, [A]ppellant filed an insurance claim
with Progressive for damage to the Bentley. Id. Appellant

_____

[1] Appellant filed his notice of appeal to this Court from the denial of post-
sentence motions on March 7, 2016. Notice of Appeal, 1/15/19. In a criminal
action, the appeal properly lies from the judgment of sentence made final by
the denial of post-sentence motions. **Commonwealth v. Kuykendall**, 2 A.3d
559, 560 n.1 (Pa. Super. 2010). Therefore, we have amended the caption
accordingly.

declined a preferred network service and instead stated that he wanted the car to be repaired by Magic Auto Body Shop (Magic). Id. at 111. On the same day that the claim was made, [A]ppellant requested a change in his insurance coverage. Id. Specifically, [A]ppellant sought to lower his deducible from $1,000 to $500.

On April 7, 2009, Progressive issued a check in the amount of $10,497.39, made payable to both [A]ppellant and Chase. Id. at 75. On April 9, 2009, [A]ppellant presented the check to Delmar Check Cashing (hereinafter "Delmar") located in Folcroft, Pennsylvania. Id. at 73. A Delmar cashier cashed the check, gave the money to [A]ppellant, whereupon Delmar submitted the check to its bank for payment. Id. at 75.

On April 16, 2009, the owner of Delmar received a fax from its bank indicating that the check was being returned because the check required a second endorsement. Id. at 76, 90, 99. The check contained [A]ppellant's signature but the check did not have the required, second endorsement from Chase. Id. Delmar was told that its bank was not going to honor the check because the check was not properly endorsed. Id. at 77, 90. Delmar contacted [A]ppellant and informed him that the check required Chase's endorsement. Id. at 78. Appellant responded that he would have Chase endorse the check, whereupon [A]ppellant took the check back from Delmar. Id. Appellant never returned with the properly endorsed check. Id. at 87.

Subsequently, Delmar's owner was driving past [A]ppellant's residence on her way to work when she noticed that [A]ppellant was sitting outside on his steps. Id. at 87. The owner approached [A]ppellant and asked what happened to the check. Id. Appellant responded that he lost it. Id.

On April 21, 2009, [A]ppellant called Progressive and stated that he lost the original check for $10,497.39 that was previously issued. Id. at 115. Appellant requested that Progressive stop payment on the original check and reissue another check. Id. at 115-16. Progressive stopped the payment on the original check and reissued said check. Id. at 117.

On April 23, 2009, [A]ppellant went to United Check Cashing (hereinafter "United") in Philadelphia, Pennsylvania. June 11, 2015, N.T. at 49. Appellant presented the reissued check in the amount of $10,497.39, made out to both [A]ppellant and Chase,

and dated for April 22, 2009. Id. at 51. The check was cashed and [A]ppellant received the money. Id.

On May 4, 2009, Magic called Progressive and requested a supplemental check in the amount of $5,065.17, made payable to [A]ppellant and Magic, for additional work completed on the Bentley. Id. at 118-20. Progressive issued the supplemental check. Id. Appellant returned to United and presented the supplemental check in the amount of $5,065.17, made out to [A]ppellant and Magic, and dated for May 4, 2009. Id. at 63-64. The check was cashed and [A]ppellant received the money. Id.

Meanwhile, a Chase fraud investigation agent reviewed [A]ppellant's reissued $10,497.39 check. Id. at 24-28, 45. The check had a stamped endorsement of "Chase Auto Finance," however the agent determined that the stamped endorsement was not valid. Id. at 26-27.

On June 8, 2009, the owner of Delmar contacted Progressive and informed Progressive that Delmar cashed the original check for [A]ppellant, but that the check was returned to Delmar because Chase had not endorsed the check. Id. at 88. Delmar's owner also informed Progressive that [A]ppellant agreed to take the check to Chase to have them endorse it, but that [A]ppellant never returned with the properly endorsed check. Id. Progressive informed Delmar's owner that they had issued a stop payment on the original check, reissued a new check, which check was thereafter cashed by [A]ppellant. Id. at 88, 121.

On the same day, the owner of Delmar received a fax from its bank informing her that the (original) $10,497.39 check had been deposited into Delmar's bank account. Id. at 91, 103. The bank stated that the check now contained the endorsement of both Chase and [A]ppellant and therefore, the check could now be properly processed. Id. As a result, Delmar's bank deducted the $10,497.39 from Delmar's bank account. Id. However, the owner stated that she never deposited the check because she had given it back to [A]ppellant in an effort to obtain the required second signature; thereafter she never saw the check again. Id. at 91, 103. Later, the owner was notified that a stop payment was issued on the check. As a result, neither the bank nor Delmar ever actually received the $10,497.39 at issue. Id. at 93, 103-04.

On October 28, 2009, [A]ppellant called the police to file another insurance claim because of damage which the Bentley incurred near the intersection of 15th and Snyder Streets in Philadelphia, Pennsylvania. June 15, 2015, N.T. at 68. Police Officer [Shamal] Bryant responded to the call. Id. When she arrived at the scene, she examined the damage to the Bentley. Id. at 72-73. There was a key mark around the entire vehicle, dents in the driver side and passenger side doors, and a chip on top of the windshield. Id. at 74. Officer Bryant estimated that the cost of the damage was approximately $1,000. Id. at 78. She described the damage in a police report. Id. at 77.

On October 29, 2009, [A]ppellant filed an insurance claim with Nationwide Insurance Company (Nationwide) for the above-mentioned vandalism incident. June 12, 2015, N.T. at 17. On November 3, 2009, a Nationwide special investigator reviewed [A]ppellant's insurance claim on the Bentley resulting from the October 28th vandalism incident. Id. at 7. On November 9, 2009, the Nationwide investigator and an auto appraiser went to Magic to meet with [A]ppellant and Magic in order to assess the Bentley's damage. Id. at 35. The investigator took a statement from [A]ppellant, and the appraiser took pictures of the damage. Id. at 36, 120. The total damage to the Bentley was appraised at $48,560.92. Id. at 121. At this time, the Bentley was more severely damaged than it was on October 28, 2009, with dents and scratches on every panel, with impact holes from a rod shaped object, with a broken side mirror, with a cracked windshield, and with the phrase "booty snatcher" carved into the hood of the vehicle. Id. at 3, 7, 121-31.

Several days later, the Nationwide investigator went to meet with Officer Bryant to discuss the Bentley's damage. Id. at 11. The investigator showed Officer Bryant pictures taken at Magic of the damage and compared the pictures to the description of the damage in the prior police report. Id. at 15.

As the investigation continued on October 5, 2011, an arrest warrant issued for [A]ppellant and he was arrested on the same day. June 17, 2015, N.T. at 26, 44. The record reveals that police recovered a diary, several receipts, one (1) Mac Book Pro laptop, one (1) Tumi laptop, one (1) Sprint USB device, three (3) AT&T USB devices, one (1) AT&T Blackberry Torch 9800, one (1) iPhone, and one (1) iPad. Id. at 30-32.

Trial Court Opinion, 12/10/19, at unnumbered 4-8.

Prior to trial, the Commonwealth filed a motion *in limine* to preclude the admission, under Pennsylvania Rule of Evidence 408, of a civil settlement between Nationwide and Appellant. The Honorable Robert P. Coleman ("the pretrial court") held a hearing on the motion on February 18, 2014, and subsequently granted the motion. Pretrial Court Opinion, 10/21/14, at 1. Appellant filed an interlocutory appeal of the ruling excluding the settlement,[2] which was quashed on August 22, 2014.

On June 11, 2015, Appellant proceeded to a jury trial. On June 18, 2015, the jury found Appellant guilty of insurance fraud, conspiracy to commit insurance fraud, and attempted theft by deception,[3] and acquitted him of forgery. On November 5, 2015, the trial court imposed concurrent terms of six to twelve months of incarceration, with immediate parole, followed by four years of probation for each of the insurance-fraud and conspiracy convictions, and eleven and one-half to twenty-three months of incarceration, with immediate parole, followed by four years of probation for the attempted theft-

---

[2] The appeal was docketed at 1346 EDA 2014 and captioned **Commonwealth v. Mohamed Camara**. At argument on a motion to revoke bail in the instant matter, the Commonwealth noted that Appellant has "multiple names, identification under other names, two Social Security numbers, two dates of birth. He's lived in several states. He is not a citizen. I believe he may be a permanent resident." N.T., 6/18/15, 18–19.

[3] 18 Pa.C.S. §§ 4117(a)(2), 903, 901, and 3922(a), respectively.

by-deception conviction. N.T., 11/5/15, at 36–37. Appellant filed post sentence motions, which were denied on March 7, 2016.

The trial court further summarized:

> On April 6, 2016, [A]ppellant timely filed the instant appeal with the Superior Court of Pennsylvania (hereinafter "Superior Court"), which appeal Superior Court docketed at 1154 EDA 2016. On April 28, 2016, pursuant to Pa.R.A.P. 1925(b), this court entered an Order directing [A]ppellant to file his Statement of Errors Complained of on Appeal. On March 24, 2016, [A]ppellant filed a motion requesting an extension of time to file his Statement, and this court granted said motion. On June 14, 2016, [A]ppellant filed another motion requesting an extension of time to file his Statement, and this court granted said motion. On June 22, 2016, [A]ppellant filed said Statement. On July 15, 2016, the Superior Court dismissed the appeal for failure to comply with Pa.R.A.P. 3517. However, on August 29, 2016, the Superior Court reinstated the . . . appeal.
>
> On December 1, 2016, this court entered its Opinion. On November 27, 2017, the Superior Court dismissed the appeal for a failure to file briefs. On August 27, 2018, a Post Conviction Relief Act ("PCRA") Petition was filed. On March 14, 2019, an Amended PCRA Petition was filed. On September 19, 2019, this court issued an Order Granting Reinstatement of Appellate Rights [*Nunc Pro Tunc*] to Superior Court.
>
> On October 15, 2019, [A]ppellant timely filed the instant appeal with the Superior Court, which appeal Superior Court docketed at 2961 EDA 2019. On October 17, 2019, pursuant to Pa.R.A.P. 1925(b), this court entered an Order directing Appellant to file his Statement of Errors Complained of on Appeal. On October 29, 2019, Appellant timely filed a Statement of Errors, pursuant to P.a. R.A.P. 1925(b).[4]

Trial Court Opinion, 12/10/19, at unnumbered 2–4 (footnotes omitted).

Appellant raises the following issues on appeal:

---

4  Appellant's Rule 1925(b) statement listed twenty-one issues.

A. Did the trial court err in holding that the prior civil settlement evidence was inadmissible?

B. Did the trial court err in not allowing [Appellant] to cross examine the Nationwide witness about its investigation into the claim even after the Commonwealth "opened the door" to such issues?

C. Did the trial court err in allowing the Commonwealth to use prior bad acts even though they were not sufficiently similar to establish common plan or scheme and even though they were not indicative of a motive?

D. Did the trial court err when it expanded the pretrial court's ruling and thereby ignored an additional corpus delecti objection?

E. Did the trial court err when it prevented defense counsel from cross examining witness Eugene Pratt regarding whether the ADA would inform his sentencing judge about his cooperation and/or whether or not he would receive a benefit from testifying against [Appellant]?

F. Did the trial court err in permitting documents which the Commonwealth purported to be from [Appellant's] diary even though there was no proof that [Appellant] wrote the entries on the date of the incident and even though [Exhibit] C62was not relevant?

G. Did the trial court err in finding that the evidence was sufficient to convict [Appellant] and in finding that the conviction was not against the weight of the evidence even though there was no "presentment" for insurance fraud; no "agreement" for conspiracy; and no "substantial act" for theft by deception?

H. Did the trial court err in failing to grant a new trial despite prosecutorial misconduct in the ADA's closing arguments?

Appellant's Brief at 2 (unnecessary capitalization omitted).[5]

Because a successful sufficiency-of-the-evidence claim warrants discharge on the pertinent crime, we address Appellant's penultimate issue, labeled issue G, first. *Commonwealth v. Toritto*, 67 A.3d 29, 33 (Pa. Super. 2013) (citing *Commonwealth v. Stokes*, 38 A.3d 846 (Pa. Super. 2011)). *See also Commonwealth v. Sanford*, 863 A.2d 428, 432–432 (Pa. 2004) (when there are issues of admissibility and sufficiency of evidence, sufficiency is addressed first).

In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. *Commonwealth v. Green*, 203 A.3d 250, 253 (Pa. Super. 2019), *appeal denied*, 216 A.3d 1036, 54 WAL 2019 (Pa. July 30, 2019). "[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." *Commonwealth v. Colon-Plaza*, 136 A.3d 521, 525–526 (Pa. Super. 2016) (quoting *Commonwealth v. Robertson-Dewar*, 829 A.2d 1207, 1211 (Pa. Super. 2003)). It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and

---

[5] Confusingly, Appellant utilized Arabic numbers to define his twenty-one issues in his Pa.R.A.P. 1925(b) statement and letters in his appellate brief; the Commonwealth utilized Roman numerals in its brief, and the trial court used Arabic numbers in its opinion.

to believe all, part, or none of the evidence. ***Commonwealth v. Tejada***, 107 A.3d 788, 792–793 (Pa. Super. 2015). The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. ***Commonwealth v. Mucci***, 143 A.3d 399, 409 (Pa. Super. 2016). Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder. ***Commonwealth v. Rogal***, 120 A.3d 994 (Pa. Super. 2015).

Appellant challenges the sufficiency of the evidence supporting his convictions for theft by deception, insurance fraud, and conspiracy. Appellant's Brief at 20, 34. The crime of theft by deception provides as follows:

> **(a) Offense defined.--**A person is guilty of theft if he intentionally obtains or withholds property of another by deception. A person deceives if he intentionally:
>
> (1) creates or reinforces a false impression, including false impressions as to law, value, intention or other state of mind; but deception as to a person's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise;
>
> (2) prevents another from acquiring information which would affect his judgment of a transaction; or
>
> (3) fails to correct a false impression which the deceiver previously created or reinforced, or which the deceiver knows to be influencing another to whom he stands in a fiduciary or confidential relationship.
>
> **(b) Exception.--**The term "deceive" does not, however, include falsity as to matters having no pecuniary significance, or puffing by statements unlikely to deceive ordinary persons in the group addressed.

18 Pa.C.S. § 3922.

The crime of criminal conspiracy is set forth in Section 903 of the Crimes

Code, which provides, in relevant part, as follows:

**§ 903. Criminal conspiracy.**

**(a) Definition of conspiracy.**— A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S. § 903.

The Crimes Code defines insurance fraud, in relevant part, as follows:

**§ 4117. Insurance fraud.**

**(a) Offense defined**. - A person commits an offense if the person does any of the following:

* * *

(2) Knowingly and with the intent to defraud any insurer or self-insured, presents or causes to be presented to any insurer or self-insured any statement forming a part of, or in support of, a claim that contains any false, incomplete or misleading information concerning any fact or thing material to the claim.

(3) Knowingly and with the intent to defraud any insurer or self-insured, assists, abets, solicits or conspires with another to prepare or make any statement that is intended to be presented to any insurer or self-insured in connection with, or in support of, a claim that contains any false,

> incomplete or misleading information concerning any fact or thing material to the claim, including information which documents or supports an amount claimed in excess of the actual loss sustained by the claimant.

18 Pa.C.S. § 4117(a)(2).

This issue is waived. This Court has stated, "In order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's [Pa.R.A.P.] 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient." *Commonwealth v. Stiles*, 143 A.3d 968, 982 (Pa. Super. 2016) (quoting *Commonwealth v. Garland*, 63 A.3d 339, 344 (Pa. Super. 2013)) (internal quotation marks omitted); *see also* Pa.R.A.P. 1925(b)(4)(ii) ("[T]he Statement shall concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge."). "Such specificity is of particular importance in cases where, as here, [A]ppellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt." *Garland*, 63 A.3d at 344. Failure to identify what specific elements the Commonwealth did not prove at trial in a Rule 1925(b) statement renders an appellant's sufficiency-of-the-evidence claim waived for appellate review. *See Commonwealth v. Tyack*, 128 A.3d 254, 261 (Pa. Super. 2015) (finding appellant's issues waived where "1925(b) statement simply declared, in boilerplate fashion, that the evidence was insufficient to support his conviction").

- 11 -

Here, Appellant generically states the following in his Pa.R.A.P. 1925(b) statement:

> The evidence was insufficient to establish Appellant as the perpetrator beyond a reasonable doubt as to the crimes of fraud (incomplete insurance claim); criminal attempt of theft by deception; false impression of insurance fraud. The Commonwealth witnesses did not establish each and every element of the crimes and therefore did not meet its burden.

Pa.R.A.P. 1925(b) Statement, 10/29/19, at ¶13. Appellant does not identify any element of any of his convictions that was not proven beyond a reasonable doubt. Consequently, Appellant's nonspecific and inaccurate claim challenging the sufficiency of the evidence, which fails to state any elements of any crimes allegedly not proven by the Commonwealth, is waived. *Tyack*, 128 A.3d at 261. Even if not waived, we would rely on the trial court's explanation of the sufficiency of the evidence, and would conclude this issue is without merit. Trial Court Opinion, 12/10/19, at unnumbered 15–18.

In the first issue Appellant presents in his brief, he asserts that the trial court erred in holding that "the prior civil settlement evidence was inadmissible." Appellant's Brief at 8. However, he does not explain to what settlement he refers. *Id.* at 8–10. He cites Pa.R.E. 408[6] but does not develop

---

[6] Pa.R.E. 408 provides:

> **(a) Prohibited Uses.** Evidence of the following is not admissible—on behalf of any party—either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:

or explain the rule's relevance. As noted *supra*, the Commonwealth filed a motion *in limine* related to this issue; Appellant does not even mention it. Our review of the docket indicates that there were no less than six motions *in limine* filed in this case. Appellant has not provided any information to explain to what he refers in this argument. "It is not this Court's responsibility to comb through the record seeking the factual underpinnings of an appellant's claim." **Commonwealth v. Samuel**, 102 A.3d 1001, 1005 (Pa. Super. 2014). Appellant has not developed any of the bald allegations nor explained this issue, and he failed to provide any citation to the record. It is beyond cavil that where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived. **Commonwealth v. Woodward**, 129 A.3d 480, 502 (Pa. 2015).

There also was a hearing relating to the motion on February 18, 2014. Commonwealth's Brief at 16; Pretrial Court Opinion, 10/21/14, at 1 n.1. The

(1) furnishing, promising, or offering--or accepting, promising to accept, or offering to accept--a valuable consideration in compromising or attempting to compromise the claim; and

(2) conduct or a statement made during compromise negotiations about the claim.

**(b) Exceptions.** The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

notes of testimony from the hearing are not included in the record certified to us on appeal. It is well-settled that "this Court may consider only the facts that have been duly certified in the record when deciding an appeal." **Commonwealth v. Kennedy**, 151 A.3d 1117, 1127 (Pa. Super. 2016) (citation omitted). "Our law is unequivocal that the responsibility rests upon the appellant to ensure that the record certified on appeal is complete in the sense that it contains all of the materials necessary for the reviewing court to perform its duty." **Commonwealth v. Holston**, 211 A.3d 1264, 1276 (Pa. Super. 2019) (*en banc*"). When an appellant fails to provide this Court the necessary items for review, the claim is waived. **Id.**; **Kennedy**, 151 A.3d at 1127. Appellant's failure to ensure the inclusion of the transcript in the certified record renders it impossible for us to review its contents and determine the validity of Appellant's allegation. Therefore, this omission also hampers appellate review, and we deem the issue waived. **Id.**

Even if not waived, we would rely on the trial court's explanation in rejecting this issue of evidence. When an appellant challenges the ruling on a motion *in limine*, our scope of review is limited to the relevant pretrial hearing transcripts. **See In re Interests of L.J.**, 79 A.3d 1073, 1088-1089 (Pa. 2013) (noting that our scope of review is limited to the evidence presented at the pretrial hearing). In conducting our review, we apply an abuse-of-discretion standard of review. **Commonwealth v. Moser**, 999 A.2d 602, 605 (Pa. Super. 2010) (citation omitted). The admissibility of evidence

is left to the sound discretion of the trial court, and a trial court's ruling regarding the admission of evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous. *Id.*

The trial court concluded as follows:

On February 18, 2014, [A]ppellant argued a motion in limine before the pre-trial court seeking the admissibility of a settlement agreement between [A]ppellant and Nationwide from a prior civil lawsuit. The motion was taken under advisement. On March 13, 2014, the pre-trial court denied said motion and issued an Order entitled, "Findings of Fact and Conclusions of Law." Subsequently, on April 8, 2014, [A]ppellant filed an interlocutory appeal to Superior Court, which appeal Superior Court docketed at 1346 EDA 2014. On May 16, 2014, the pre-trial court issued an "Amended Order of Findings of Fact and Conclusions of Law" to certify the case for interlocutory appeal. However, on August 22, 2014, Superior Court quashed the appeal due to untimeliness. . . .

While the merits of the interlocutory appeal were never decided, this court agrees with the pre-trial court's analysis of the admissibility of the settlement agreement. In the findings of fact and conclusions of law, the pre-trial court stated:

In reviewing the judicial and legislative history of this issue, this court believes that evidence of prior civil settlements should not be admissible in subsequent criminal cases.

* * *

It is noteworthy that [Rule 408] does not specify between civil and criminal cases in excluding settlement agreements.

* * *

The intent behind Rule 408 is to promote and encourage settlement negotiations and case resolutions and to free up judicial recourses. That intent would be completely nullified by allowing such offers to settle as evidence against the

- 15 -

party offering them. Although this situation is extremely rare and civil suits rarely precede criminal cases, it is important that the legislative intent be followed by all courts. This court believes that the Legislature showed a clear intent to promote settlements and not to punish the parties offering to settle. Accordingly, this court does not believe that Nationwide's settlement offer should be admissible against it in the current criminal case.

See, ["]Findings of Fact and Conclusions of Law," pages 1-2, attached as Exhibit "D."

Appellant argues that the Settlement should be admitted for other purposes such as witness bias and/or prejudice. The pre-trial court's analysis notes:

Furthermore, the comments accompanying the statute note that, "Pa.R[.]E. 408(A) differs from F.R.E. 408(a) in that the federal rule in paragraph (a)(2) contains language that seems to permit the use in criminal cases of statements made to government investigators, regulators, or enforcement authority in negotiations in civil cases. That language has not been adopted because of the use of such statement might conflict with the policies underlying Pa.R.Crim.P. 586 (relating to dismissal of criminal charges not committed by force or violence upon payment of restitution) or Pa.R.Crim.P. 546 (relating to dismissal upon satisfaction or agreement)." By intentionally excluding the exception found in the federal rules, the Pennsylvania Legislature has exhibited a clear intent to limit this type of evidence as much as possible.

This court agrees with the pre-trial court's interpretation of Pa.R.E. 408, and will thereby accept the pre-trial court's decision on the inadmissibility of the settlement agreement grounded in Pa.R.E. 408 as well as the fact that the Agreement does not fall within the exception.

Trial Court Opinion, 12/10/19, at unnumbered 8–10. We note, as well, that

the comment to Pa.R.E. 408 provides that the rule "is consistent with 42

Pa.C.S. § 6141, which provides, in pertinent part," that settlement for

property damage "shall not be admissible in evidence on the trial of any matter." Pa.R.E. 408 cmt. Therefore, even if not waived, we would reject the issue as meritless.

Appellant next argues that the trial court erred in not permitting Appellant to cross-examine the Nationwide witness about its investigation into the claim "even after the Commonwealth 'opened the door' to such issues." Appellant's Brief at 11. The witness to whom Appellant refers is Nationwide Investigator Frank McCole. *Id.* As discerned by the Commonwealth, Appellant did not seek to cross-examine Mr. McCole about the "settlement decision"; thus, the trial court did not "preclude" Appellant from doing so, as Appellant posits. Commonwealth's Brief at 18.

"It is well settled that the scope of cross-examination is a matter within the discretion of the trial court and will not be reversed absent an abuse of that discretion." *Commonwealth v. Largaespada*, 184 A.3d 1002, 1009 (Pa. Super. 2018) (citing *Commonwealth v. Hitcho*, 123 A.3d 731, 769 (Pa. 2015)).

Appellant fails to cite to the place in the record where the court refused such cross-examination. As the trial court stated, the court permitted Appellant to cross-examine the Nationwide Investigator and did not preclude any question relating to a "settlement decision." Trial Court Opinion, 12/10/19, at 11; *See* N.T., 6/12/15, at 85–116. The only Commonwealth objections that were sustained focused on: Mr. McCole's personal knowledge

about Appellant's rental insurance, N.T. 6/12/15, at 86-87; the lack of clarity of a question asked about 911 calls made the day of the incident, *id.* at 107; and Mr. McCole's conclusions with respect to the person who drove Appellant to New York City immediately after the initial report to Police Officer Bryant had been made. *Id.* at 110-113. Appellant never sought to cross-examine Mr. McCole about the "settlement decision," nor was such an attempt denied by the trial court.

There was one reference by Mr. McCole to a settlement, where he stated, "The PH [policy holder, Appellant] inquired about status on all of the calls and was pushing for a settlement decision." N.T., 6/12/15, at 79. Our review of the record reveals that the reference to settlement there referred to the decision on the initial claim that was then being investigated. Moreover, there was no request, nor refusal by the court, of cross-examination. *Id.* This issue lacks merit.

Appellant next contends the trial court erred in admitting prior bad acts pursuant to Pa.R.E. 404(b).[7] Appellant's Brief at 12. Appellant suggests the

---

[7] Pa.R.E. 404 provides, in pertinent part:

**(b) Crimes, Wrongs or Other Acts**.

*(1) Prohibited Uses*. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

admission of such evidence "allowed the inclusion of irrelevant, non-probative and unduly prejudicial evidence." *Id.* Appellant asserts that the pretrial court abused its discretion by admitting evidence that Appellant passed an unendorsed check to Delmar and that Appellant was behind in his car payments. Appellant's Brief at 13, 15.

This issue is waived. The notes of testimony from the proceeding at which the pretrial court admitted evidence in accordance with Pa.R.E. 404 is not in the record certified on appeal. Docket entry 50 states that the pretrial conference was scheduled for November 15, 2013. Docket entry 51 references the Commonwealth's motion *in limine* and listed it for the November 15, 2013 hearing. Docket entry 52 states, "Commonwealth Prior Bad Acts motion to introduce bad check is granted." Regarding the evidence of Appellant's late car payments, the only reference in the record is to the pretrial court's ruling, without explanation. *See* N.T., 6/11/15, at 35 ("[I]t goes along with [the pretrial court's] ruling that some of the prior bad acts leading up to this would be admitted."). The absence of the notes of testimony

---

*(2) Permitted Uses*. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b).

from November 15, 2013, addressing the issues compels waiver on appeal.

***Kennedy***, 151 A.3d at 1127.

Even if not waived, based on the record before us, we would not find an

abuse of discretion by the trial court. The trial court stated the following:

> Pa.R.E[]. 404(b) permits the admission of prior bad acts into evidence for other purposes such as motive, opportunity, intent, etc. The pre-trial court held that evidence of [A]ppellant's prior bad acts were admissible as said evidence fell within the purview of Pa.R.E[]. 404(b)'s "Permitted Uses." The pre-trial court also weighed the probative value of the prior bad acts evidence against its potential for unfair prejudice and found that the evidence was not unduly prejudicial. The pre-trial court was well within its discretion to admit the prior bad acts evidence pursuant to Pa. R.E[]. 404(b).
>
> This court agrees with the pre-trial court's interpretation of Pa.R.E[]. 404(b), and will thereby accept the pre-trial court's decision as to the admissibility of prior bad acts evidence grounded in Pa.R.E[]. 404(b).

Trial Court Opinion, 12/10/19, at unnumbered 12.

Evidence of other bad acts pursuant to Rule 404 is admissible when

offered for a relevant purpose other than to show that a defendant acted in

conformity with those acts or to show a defendant's criminal propensity.

***Commonwealth v. Sherwood***, 982 A.2d 483, 497 (Pa. 2009). It is

admissible, *inter alia*, to establish the existence of a common scheme or plan.

***Commonwealth v. Keaton***, 45 A.3d 1050, 1066 (Pa. 2012) (citing

***Commonwealth v. Bronshtein***, 691 A.2d 907, 915 (Pa. 1997); Pa.R.E.

404(b)(2)). "Whether evidence of [other acts] is admissible under Rule 404

is a straightforward relevance test that can be assessed by analyzing the

charges, the proffered testimony, and evidence available to support the offer of proof." *Commonwealth v. Hicks*, 91 A.3d 47, 53 n.8 (Pa. 2014). In determining whether evidence of other acts is admissible, the trial court must balance the probative value of such evidence against its prejudicial effect. *Sherwood*, 982 A.2d at 497.

The admission of crimes or other acts is within the discretion of the trial court and will only be reversed upon a showing of an abuse of discretion. *Sherwood*, 982 A.2d at 495. "Abuse of discretion is not merely an error of judgment, but rather where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." *Commonwealth v. Aikens*, 990 A.2d 1181, 1184-1185 (Pa. Super. 2010) (quoting *Commonwealth v. King*, 959 A.2d 405, 411 (Pa. Super. 2008)) (internal citations omitted).

Appellant argues that evidence that he cashed a check without the required endorsement at Delmar was improperly admitted because the Delmar incident "had nothing to do with insurance fraud" or any other basis for the charges against him. Appellant's Brief at 14. The record reveals otherwise as there was a direct and logical connection between the Delmar incident and the check cashing at United in Philadelphia on April 23, 2009.

Appellant successfully cashed the Progressive check for the March 2009 insurance claim at Delmar on April 9, 2009. The check was not properly endorsed because the second payee, Chase Auto Finance, the lien-holder, had

not endorsed the check. The owner of Delmar informed Appellant that the endorsement by Chase was necessary and gave the check to Appellant upon Appellant's promise to obtain Chase's endorsement. N.T., 6/11/15, at 28, 74–79, 86–97, 107–113.

This evidence was admitted with respect to the charged forgery for passing the second check to United in Philadelphia on April 23, 2009. Appellant obtained a new, identical check from Progressive on April 22, 2009, by falsely claiming that he had lost the first one. N.T., 6/11/15, at 116–117. Appellant presented the second check to United with a fraudulent endorsement purportedly from Chase and received the full face value of the check from United, less a fee. *Id.* at 26–29, 48–54.

The Delmar and United forgeries were substantially similar crimes.[8] They both involved identical checks from Progressive, for the same vehicle, on the same auto insurance policy, for the same claim, to the same payees. In both instances, Appellant cashed the checks without a proper endorsement from Chase, and received over $20,000. Moreover, this evidence proved the absence of any mistake by Appellant because the owner of Delmar told Appellant that a Chase endorsement was necessary, and Appellant then obtained a sham endorsement before presenting it to United. "Evidence of prior bad acts is ... admissible where the particular crime or act was part of a

---

[8] We reiterate that Appellant was found not guilty of forgery. N.T., 6/18/15, at 14.

chain, sequence, or natural development of events forming the history of a case." **Commonwealth v. Passmore**, 857 A.2d 697, 711 (Pa. Super. 2004); **see also Commonwealth v. Cascardo**, 981 A.2d 245, 250 (Pa. Super. 2009) (same).

Appellant's complaint with respect to the evidence that he was behind on his car payments to Chase was admissible because it related to Appellant's motive to forge the Chase endorsement. Mary Dittman, Chase's investigator in Global and Corporate Security, testified that any lawful Chase endorsement would have resulted in Appellant actually receiving no cash because Chase would have applied the amount Appellant owed on the car loan to Appellant's account. N.T., 6/11/15, at 28, 29–31. By cashing the second Progressive check at United with a false Chase endorsement on it, however, Appellant received the entire amount of the check, less the United fee. **Id.** at 5, 53.

Therefore, upon review, even if this issue were not waived, we would discern no abuse of the trial court's discretion in admitting the challenged evidence.

Next, Appellant contends that the trial court erred when it expanded the pretrial court's ruling with respect to permitting evidence of his "late payments" because "they were well beyond what can be argued to be a pertinent period," and the court ignored an additional *corpus delecti* objection. Appellant's Brief at 18, 19.

As noted *supra*, the record does not include the specific terms of the pretrial court's ruling with respect to the passing of the unendorsed check at Delmar. Therefore, any claim that the trial court expanded or misinterpreted that ruling is waived because, as explained *supra*, the notes of testimony from the November 15, 2013 hearing are not included in the record certified on appeal. ***Kennedy***, 151 A.3d at 1127.

Even if not waived, the issue lacks merit. Appellant complains that the trial court permitted evidence of "late payments which were well beyond what can be argued to be a pertinent period." Appellant's Brief at 18. Rather, the trial court limited the evidence to the relevant period of Appellant's alleged forgery. The Commonwealth confirmed with Ms. Dittman that Appellant owed $4,142.36 on April 24, 2009, of which $2,236.56 was past due. N.T., 13/11/15, at 31. Appellant did not object. ***Id.*** When the Commonwealth asked, without specifying a date, whether it was "fair to say that [Appellant] was late a lot of times," Appellant objected on the basis of relevance. ***Id.*** at 31–32. At the ensuing sidebar, defense counsel asserted that the matter had been handled pretrial and that "the witness was testifying as to what would've happened to the money, if [Chase] had an appropriate enforcement. I didn't realize we were going through his payment history back" three years. ***Id.*** at 32–33. The prosecutor asked to rephrase the question to specify late payments "subsequent to April." ***Id.*** at 34. Appellant again objected to testimony that he would owe money in the future, but once again did so on

relevance grounds, not on the grounds asserted on appeal on which the pretrial court allegedly had previously ruled. *Id.* at 34–35. *See Commonwealth v. Lopez*, 57 A.3d 74, 82 (Pa. Super. 2012) ("A party complaining, on appeal, of the admission of evidence in the court below will be confined to the specific objection there made. If counsel states the grounds for an objection, then all other unspecified grounds are waived and cannot be raised for the first time on appeal.") (internal citations omitted); *Commonwealth v. Torres-Kuilan*, 156 A.3d 1229 (Pa. Super. 2017) (citing Pa.R.A.P. 302(a) (issues not raised in the lower court are waived and cannot be raised for the first time on appeal)).

The trial court found the evidence to be relevant and that it went "along with [the pretrial court's] ruling" because it was "in the same vein." *Id.* at 35. The precise wording of the pretrial court's ruling was never placed on the record; the trial court, the Commonwealth, and most definitely, Appellant, apparently understood the ruling and no one sought to place it on the record at trial. *Id.*

Appellant's claim that the pretrial court did not rule with respect to the *corpus delicti* rule cannot be addressed, as the certified record does not contain the full ruling, as discussed *supra*. Moreover, Appellant has not explained the nature of his argument. While he baldly references the notes of testimony of June 11, 2015, at page eighty-five, he fails to develop his claim and provide relevant support. Appellant's Brief at 19–20. *Woodward*,

129 A.3d at 502 ("[W]here an appellate brief fails to ... develop an issue in any other meaningful fashion capable of review, that claim is waived.").

Appellant next argues the trial court erred "when it prevented defense counsel from cross-examining witness Eugene Pratt[9] ("Eugene")] regarding whether the [prosecutor] would inform [the presiding judge] about [Eugene's] cooperation and/or whether or not [Eugene] would receive a benefit from testifying against [Appellant]." Appellant's Brief at 21. In actuality, Appellant complains about the trial court's ruling sustaining a single objection to Appellant's cross-examination of Eugene. Appellant's Brief at 21–22.

While Appellant fails to explain any basis for his argument on this issue, we note the following from our review of the record. Eugene engaged in insurance fraud with John Magry ("Magry"), the owner of Magic. N.T., 6/15/12, at 6–9, 12–13, 18–19. Eugene was present when Magry and other workers damaged Appellant's car beyond the original damage, when it was brought to Magic. *Id.* at 11–12, 20, 22. Eugene also had numerous convictions for *crimen falsi* and crimes of violence, including a guilty plea to a federal gun possession charge for which he had been sentenced to six years of imprisonment. *Id.* at 14–16, 21. As a condition of that guilty plea, Eugene agreed to provide information that he had about other crimes. *Id.* at 16. Included in that proffer was his admission to committing insurance fraud with

_____

[9] Eugene Pratt and Appellant are not related. N.T., 6/15/15, at 24.

Magry and other information he had about Magry's operation. *Id.* at 16–17.

Federal authorities knew that Magry was under investigation by local

authorities, a fact that Eugene did not know when he proffered the

information. Detective Terrence Jones, an investigator with the Philadelphia

District Attorney's Office, was informed about Eugene, who was interviewed

by Philadelphia detectives on October 27, 2011. *Id.* at 17; N.T., 6/17/15, at

42–44). Eugene and Magry were charged with insurance fraud, and Eugene

pleaded guilty and was awaiting sentencing at the time of Appellant's trial.

N.T., 6/15/15, 14, 22–23. Eugene acknowledged that he hoped his testimony

in the instant matter would "help" him when he was sentenced, but he stated

there was no formal agreement in place. *Id.* at 17.

The trial court explained as follows:

The Supreme Court of Pennsylvania (hereinafter "Supreme
Court") has held:

> whenever a prosecution witness may be biased in favor of
> the prosecution because of outstanding criminal charges or
> because of any non-final criminal disposition against him
> within the same jurisdiction, that possible bias, in fairness,
> must be made known to the jury. Even if the prosecutor
> has made no promises, either on the present case or on
> other pending criminal matters, the witness may hope for
> favorable treatment from the prosecutor if the witness
> presently testifies in a way that is helpful to the prosecution.
> And if that possibility exists, the jury should know about it.

Commonwealth v. Lane, 621 A.2d 566, 567 (Pa. 1993) (citing
Commonwealth v. Evans, 512 A.2d 626 ([Pa.] 1986)).

Further, pursuant to the Pennsylvania Constitution, a
defendant has the right to confront any adverse witness for

purposes of impeaching his/her credibility.  See, Pa. Const., Article 1, Section 9.

However, the Supreme Court has also held that "the scope and limits of cross-examination is vested in the trial court's discretion and that discretion will not be reversed unless the trial court has clearly abused its discretion or made an error of law." Commonwealth v. Ogrod, 839 A.2d 294, 322 (Pa. 2003), cert. denied, 543 U.S. 1188 (2005) (citing Commonwealth v. Begley, 780 A.2d 605, 627 (Pa. 2001)[)].  Moreover, "the trial court is in the best position to weigh the probative value of introducing specific open criminal charges facing a witness against the prejudicial effect of their introduction."  Lane at 568.

In the instant matter, the record reveals that the court permitted [A]ppellant to cross-examine Eugene Pratt about his criminal record.  June 15, 2105, N.T. at 24-28.  In addition, [A]ppellant specifically asked Eugene Pratt if he was testifying against [A]ppellant in order to receive the benefit of a reduced sentence at his upcoming sentencing hearing.  Id. at 24-25. [Eugene] replied that he was only testifying against [A]ppellant because it was the "right thing to do."  Id. at 25-26.  Thus, the jury was made aware of any potential bias in favor of the Commonwealth which could have motivated [Eugene] to testify against [A]ppellant in order to receive favorable treatment.  Lane at 567.  Moreover, [A]ppellant was given the opportunity to confront [Eugene] about his potential bias in accordance with Article 1, Section 9 of the Pennsylvania Constitution.

The only limitation the court placed upon [A]ppellant's cross[-]examination of [Eugene] was when [A]ppellant specifically asked about [Eugene's] sentencing judge and whether the Commonwealth had certain discussions with this court, as [Eugene's] sentencing judge, about [Eugene's] willingness to testify. June 15, 2[01]5, N.T. at 29-32.  This line of questioning was irrelevant, prejudicial, and could potentially elicit hearsay evidence.  As such, the court was well within its discretion to limit this line of cross-examination.  Ogrod at 322.

Trial Court Opinion, 12/10/19, at unnumbered 13–14.

Appellant's sole complaint herein relates to the following exchange.

During cross-examination of Eugene, defense counsel asked:

- 28 -

[Defense counsel]: Okay. All right. Let me ask you this. You're not waiting to testify against [Appellant] in this case, and then hope that [the prosecutor] runs into [Eugene's sentencing judge] and—

[Commonwealth]: Objection

The Court: Objection sustained.

N.T., 6/15/15, at 32. Appellant's complaint is that this exchange prevented him from questioning Eugene about the possibility of, or his expectation of, leniency in his open case or "favored treatment by a prosecuting authority." Appellant's Brief at 22. It is noteworthy that defense counsel's next question, without objection, was: "What do you expect to happen with your plea or your sentence for the Commonwealth when you appear before" your sentencing judge? *Id.* Eugene replied, "I don't know." *Id.* Cross-examination of the witness continued for four more pages without any objections interposed. *Id.* at 33–38.

Our review of the record compels our agreement with the trial court that Appellant was not precluded from asking questions concerning Eugene's expectation or hope for leniency in sentencing. The trial court's ruling was not an abuse of discretion.

In his sixth issue, Appellant posits that the trial court erred in admitting Appellant's diary. Appellant's Brief at 24. Appellant argues:

> During execution of a search warrant on [Appellant's] home, police recovered a "diary." The Commonwealth sought to admit two entries. One named "List of the Future" which detailed that [Appellant] wanted to buy and operate a hotel. (C-62) 6/17/15, P.8.) The Commonwealth also sought to admit a writing that

> appeared to be prepared by [Appellant] regarding actions he allegedly took with respect to the vandalism claim. (C-44) 6/17/15 P.9.

*Id.*

On the final day of trial, the Commonwealth indicated that it intended to introduce Appellant's diary entries through the testimony of Detective Jones. N.T., 6/17/15, at 7–9. Appellant objected and stated, "I would object. Just in regards to the prejudice outweighing probative value." *Id.* at 9. The trial court worked through the relevancy of the entries by determining their dates, and Appellant agreed that entry C-44 was dated "October 28, 2009," and that he "would rest on my objection for the record." *Id.* at 9–10. Appellant made no claim that the entries were not written by him, agreeing with the trial court that there was "[n]o issue as to the author." *Id.* at 10.

With respect to entry C-62 dated July 27, 2010, the Commonwealth argued that it was written in the course of the conspiracy to obtain money from the insurance company. N.T., 6/17/15, at 10. Appellant did not object to its admission. *Id.* at 12. The trial court then ruled, "Given C-44, the date of the incident, the court—and given there is no objection from defense that this is, in fact, [Appellant's] writing, no issue with C-44. The court grants the Commonwealth's request to introduce C-44 and C-62." . . . "With respect to defense argument. It's probative value is not outweighed by the potential prejudice." *Id.*

To the extent Appellant infers that he did not write the diary entries, that claim is waived. Appellant specifically declined to argue that to the trial court; indeed, he indicated his agreement with the trial court's conclusion that there was "[n]o issue as to the author." N.T., 6/17/15, at 10. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); *Commonwealth v. Spell*, 28 A.3d 1274, 1280 (Pa. 2011) (failure to raise a timely objection waives issue).

Appellant also avers that the trial court "erred in admitting the diary entry without considering defense counsel's objection based on Rule 403(b)." Appellant's Brief at 26. Appellant, true to his presentation throughout his brief, makes no reference to the record regarding the objection and fails to identify and explain the rule and its applicability to his contention. *Id.* Indeed, we assume he is referring to Pa.R.E. 403, "Excluding Relevant Evidence for Prejudice, Confusion, Waste of Time, or Other Reasons, but that rule does not have a subpart (a) or (b). Moreover, when he objected at trial, he baldly claimed "the prejudice outweigh[ed] probative value," without identifying or explaining the prejudice. N.T., 6/17/15, at 9. For these reasons, this claim is waived.

Even if not waived, we note that the trial court reviewed and determined the date and relevancy of the entries, and it expressly found that probative value was not outweighed by any potential prejudice. N.T., 6/17/15, at 9–12. Moreover, diary entry in Exhibit C-44, an itemized list by Appellant of steps

he took with respect to the vandalism claim, was the basis of the charges for insurance fraud and attempted theft by deception and therefore, clearly relevant. Appellant now asserts on appeal for the first time that he was prejudiced because the entry could have been written in response to the Nationwide claim investigation rather than a contemporaneous "document[ation of] his crime." Appellant's Brief at 26. That is an argument for the jury relating to the entry's weight, not its admissibility. The diary entry in Exhibit C-62 represented a wish-list of expensive items Appellant hoped to purchase and was dated at a time when the insurance claim was still in dispute. Appellant argues on appeal, once again for the first time, that the entry was "irrelevant" and had no probative value because it was the equivalent of any "ambitious goal" a person may have. *Id.* To the extent the meaning of the entry was open to interpretation, that conclusion is an argument regarding weight, not admissibility. Thus, if we were to address the merits, we would find the issue lacks merit.

Appellant's final issue asserts that the trial court failed to grant a new trial "despite prosecutorial misconduct in the [prosecutor's] closing arguments. Appellant's Brief at 2, 34. The trial court determined that this issue was not preserved for appeal because Appellant "did not place an objection on the record at any point during the Commonwealth's closing argument." Trial Court Opinion, 12/10/19, at unnumbered 20. We agree. We have reviewed the complete closing argument and note that Appellant

wholly failed to object to **any** remark during or after the prosecutor's summation. N.T., 6/17/15, at 113–149. Therefore, we agree with the trial court that this assertion of error is waived. Trial Court Opinion, 11/21/14, at 7–8; **Commonwealth v. May**, 31 A.3d 668, 673 (Pa. 2011) (citing Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal")); **see also** Pa.R.E. 103(a) (party may claim error in admission of evidence only when party makes a timely objection).

We reject Appellant's attempt to rely upon **Commonwealth v. Culver**, 51 A.3d 866 (Pa. Super. 2012), in an attempt to overcome waiver. That case is distinguishable. In **Culver**, a Commonwealth appeal where the trial court had granted a new trial based upon prosecutorial misconduct, the Commonwealth argued waiver, claiming that defense counsel had not objected to every specific act of misconduct. This Court rejected that claim, noting that defense counsel had objected, at a minimum, to six instances during the prosecutor's closing argument, requiring the trial court to give repeated cautionary and curative instructions to the jury. **Id.** at 873. As noted by the Commonwealth, "The record in **Culver** thus presents a stark contrast to [Appellant's] utter failure to raise *any* timely objections before the trial court." Commonwealth's Brief at 55 (emphasis in original). The trial court properly concluded that the alleged issues of prosecutorial misconduct were waived.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>2/26/21</u>