**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NATHANIEL NYIEM HILL | : | |
| | : | |
| Appellant | : | No. 648 MDA 2022 |

Appeal from the Judgment of Sentence Entered April 12, 2022
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s): CP-41-CR-0001758-2019

BEFORE: PANELLA, P.J., BENDER, P.J.E., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED MARCH 20, 2023**

Appellant Nathaniel Nyiem Hill appeals from the judgment of sentence imposed following his convictions for possession with intent to distribute a controlled substance (PWID) and related offenses. Appellant argues that the Commonwealth did not present sufficient evidence identifying him as the perpetrator of the offenses. Following our review, we affirm.

The trial court summarized the facts of this case as follows:

> On July 16, 2019, Trooper Andrew Corl of the Pennsylvania State Police was working with the [confidential informant (CI)], as he had done twice before, to arrange a purchase of heroin. The following day, July 17, 2019, Trooper Corl instructed the CI, who goes by the name "Amy" when purchasing drugs, to reach out to her dealer who she stated she knew as ["Naj"[1]]. At 2:06 p.m.,

---

[1] Throughout its opinion, the trial court states that "Naz" was the individual who sold the drugs to the CI. However, the record reflects that the CI knew that individual as "Naj." **See** N.T. Trial, 9/13/21, at 18, 85. For purposes of consistency, we have amended the quotations from the trial court's opinion accordingly.

the CI texted a [phone] number she used to arrange for the purchase of drugs, which had a 272 area code, and asked for a "honey bun," which is a bundle of heroin. The CI received a text back instructing her to call the number, which she did, and at which point a meeting location for the sale of the drugs was determined.

Thereafter, Trooper Corl took the CI to Rural Avenue between Fifth and Fourth Streets [in Williamsport]. Trooper Corl parked his unmarked car along Fifth Street and Louisa Street, such that Rural Avenue was to the north and 4th Street was to the east. Trooper Corl provided the CI with $70.00 of pre-recorded money and the CI texted the 272 number that she had arrived at 2:43 p.m. Between approximately 2:51 p.m. and 2:54 p.m., the CI texted [Naj] to inquire when he would be at the meeting location because it was "about to pour again."

At some point thereafter, Trooper Corl observed two black males walk past his vehicle and then walked east on an unnamed alley between Rural Avenue and Louisa Street. Both males were wearing black button down shirts and one of them had on a white undershirt and a ball cap. Trooper Corl later determined that the male wearing the white undershirt was [Appellant] based on his own comparison of [Appellant's] license and JNET photographs. The next thing Trooper Corl saw was the CI walking back toward him at which time she gave him ten (10) small blue bags containing a white powder, later determined to be a combination of heroin, cocaine, and fentanyl. Trooper Corl did not see the buy occur, but when the CI was briefed, [the CI] told him that she dealt with the male with the white undershirt, known to her as [Naj].

Detective Tyson Havens of the Lycoming County Narcotics Enforcement Unit testified that he witnessed the same two males that walked by Trooper Corl's vehicle walking south on Fourth Street at which time he was able to obtain video surveillance of them as well as still shots. Detective Havens testified that he "knew [Appellant's] face from prior contact but that there were no tattoos on [Naj]'s neck as of July 17, 2019.["]

The CI testified that on July 17, 2019, she texted the 272 number, which she used frequently to purchase heroin and that in the past, she has dealt with many people using that same number. When she was directed to call the person with whom she was texting, she knew she was speaking with [Naj] because she recognized his

voice. [Naj] said he would send someone to sell her the drugs, but that he ended up coming himself with another individual unknown to the CI. When [Naj] arrived, he was wearing a white undershirt and was taller than the other individual. After the three of them had turned down the alley, the CI gave the $70 to [Naj] and [Naj] is the one who handed her the drugs.

The CI testified that she knew the person in the white undershirt to be [Naj] because she has bought drugs from him for two years on and off and because of the gap in his teeth. At the time of trial, the CI identified [Appellant] as the person she knows to be [Naj] and the person who sold her the drugs on July 17, 2019. The CI later admits, though, that at the time of trial, [Appellant's] teeth "did not look as gapped out" as they did at the time of the buy. The CI admitted that she was using drugs as of July 2019 but even so, she was able to interact with others and know with whom she was speaking.

At the time of trial, the Commonwealth introduced two (2) surveillance videos. On the first video, the CI is seen walking north on Fifth Street with two black males, their backs facing the camera. The males are both wearing black button down shirts with black pants. One of them has a hat on, and is taller than the other. Eventually, the three make a right hand turn onto the unnamed alley running parallel between Rural Avenue and Louisa Street, leaving the camera's line of sight. No transaction is captured on video.

The second video, taken by Detective Havens, shows the same two males walking south on Fourth Street without the CI, toward the camera. It is clear in the video that the male wearing the white undershirt and hat has a large circular tattoo on the under part of his left forearm, closer to his elbow than to his wrist.

The JNET photographs taken of [Appellant] on July 2, 2019 as well as [Appellant's] driver's license photograph, compared with the still shots of the video taken by Detective Havens, shows that the male in the white undershirt is [Appellant]. Additionally, the JNET photographs clearly show a large, round tattoo on the left underside of [Appellant's] forearm. However, it does not appear that [Appellant] had a tattoo on his neck as of July 2, 2019.

Trial Ct. Op. & Order, 1/28/22, at 2-5 (citations and footnotes omitted).

- 3 -

On December 5, 2019, the Commonwealth charged Appellant with PWID, delivery of a controlled substance, criminal use of a communication facility, possession of a controlled substance, and possession of drug paraphernalia.[2] Ultimately, following a bench trial on September 13, 2021, the trial court found Appellant guilty of all charges. Appellant subsequently filed a post-trial motion challenging the weight of the evidence, which the trial court denied. *See* Trial Ct. Op. & Order, 1/28/22.

On March 25, 2022, the trial court sentenced Appellant to an aggregate term of four to nine years' incarceration. The trial court issued an amended sentencing order on April 12, 2022, which added a term of twelve months' reentry supervision, consecutive to the previously imposed sentence. Am. Sentencing Order, 4/12/22. Appellant filed a timely notice of appeal[3] and a

---

[2] 35 P.S. §§ 780-113(a)(30), (a)(30), 18 Pa.C.S. § 7512(a), 35 P.S. §§ 780-113(a)(16), (a)(32).

[3] Appellant erroneously stated that the appeal was from the September 13, 2021 verdict and the March 25, 2022 judgment of sentence. *See* Notice of Appeal, 4/21/22; *see also Commonwealth v. O'Neill*, 578 A.2d 1334, 1335 (Pa. Super. 1990) (stating that "in criminal cases appeals lie from judgment of sentence rather than from the verdict of guilt"). In cases where the trial court amends the judgment of sentence during the period it maintains jurisdiction pursuant to 42 Pa.C.S. § 5505, the direct appeal lies from the amended judgment of sentence. *See Commonwealth v. Garzone*, 993 A.2d 1245, 1254 n.6 (Pa. Super. 2010). Therefore, the appeal is properly from the April 12, 2022 amended judgment of sentence, and we have amended the caption accordingly.

court-ordered Pa.R.A.P. 1925(b) statement.[4]  The trial court issued a Rule 1925(a) opinion adopting the analysis set forth in its January 28, 2022 opinion and order denying Appellant's post-trial motion.  *See* Trial Ct. Op., 6/3/22, at 1-2.

On appeal, Appellant raises the following issue for review:

Whether there existed sufficient evidence to find [Appellant] guilty of [PWID], delivery of a controlled substance, criminal use of a communication facility, possession of a controlled substance and possession of drug paraphernalia.

Appellant's Brief at 4 (footnotes omitted).[5]

_____

[4] Here, Appellant's Rule 1925(b) statement does not identify the elements Appellant claims the Commonwealth failed to prove at trial.  *See* Pa.R.A.P. 1925(b) Statement, 5/5/22, at 1.  It is well settled that a vague challenge to the sufficiency of the evidence may result in waiver.  *See Commonwealth v. Roche*, 153 A.3d 1063, 1072 (Pa. Super. 2017).  Instantly, the trial court addressed Appellant's sufficiency claims, and the case against Appellant was relatively straightforward.  Therefore, we decline to find waiver.  *See Commonwealth v. Laboy*, 936 A.2d 1058, 1060 (Pa. 2007) (*per curiam*).

[5] We note that in his argument section, Appellant also challenges the credibility of the Commonwealth's witnesses.  However, such claims go to the weight, not the sufficiency, of the evidence.  *See Commonwealth v. Wilson*, 825 A.2d 710, 713-14 (Pa. Super. 2003) (explaining that our review of the sufficiency of evidence does not include an assessment of credibility, which is more properly characterized as a challenge to weight of evidence).  Further, Appellant included a weight-of-the-evidence claim in his Rule 1925(b) statement, but he did not include that issue in his statement of questions on appeal, nor did he develop a proper weight claim in his brief.  Accordingly, Appellant's weight claim is waived.  *See Commonwealth v. Kennedy*, 151 A.3d 1117, 1122, n.12 (Pa. Super.  2016); *see also* Pa.R.A.P. 2116(a).

In any event, were we to reach Appellant's challenge to the weight of the evidence, we would conclude that the trial court did not abuse its discretion in
*(Footnote Continued Next Page)*

Appellant argues that the evidence was insufficient to identify him as the individual who sold the drugs to the CI. *Id.* at 8-9. In support, Appellant asserts that "[t]here was no witness presented that was able to testify that they witnessed the controlled drug transaction." *Id.* at 8. Further, Appellant notes that although the police were recording the CI while he was outside of the police vehicle, there was no footage of the controlled buy. *Id.* Appellant also claims that, at the time of his arrest, he did not have "any buy money" in his possession, nor did he have the cellular phone used to set up the purchase. *Id.* Finally, Appellant argues that there "was no evidence presented connecting [Appellant] to the number associated with the cellular phone that was contacted to set up the buy." *Id.*

When reviewing a sufficiency claim, our standard of review is as follows:

> Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh

---

denying Appellant's motion for new trial and would affirm on the basis of the trial court's opinion. **See** Trial Ct. Op. & Order at 5-8.

the evidence and substitute our judgment for that of the factfinder.

***Commonwealth v. Palmer***, 192 A.3d 85, 89 (Pa. Super. 2018) (citation omitted and formatting altered).

This Court has held that, "[i]n addition to proving the statutory elements of the crimes charged beyond a reasonable doubt, the Commonwealth must also establish the identity of the defendant as the perpetrator of the crimes." ***Commonwealth v. Smyser***, 195 A.3d 912, 915 (Pa. Super. 2018) (citation omitted). Further, "[i]t is settled that a positive identification by one witness is sufficient for conviction." ***Commonwealth v. Johnson***, 180 A.3d 474, 478 (Pa. Super. 2018) (citation omitted).

Appellant's claim relates solely to the sufficiency of the identification evidence. Accordingly, we will limit our review to whether the Commonwealth established the identification element. ***See Commonwealth v. Cain***, 906 A.2d 1242, 1244 (Pa. Super. 2006) (declining to address the sufficiency of evidence as to every element of a crime where an appellant only challenges identification evidence).

> [E]vidence of identification need not be positive and certain to sustain a conviction. Although common items of clothing and general physical characteristics are usually insufficient to support a conviction, such evidence can be used as other circumstances to establish the identity of a perpetrator. Out-of-court identifications are relevant to our review of sufficiency of the evidence claims, particularly when they are given without hesitation shortly after the crime while memories were fresh. Given additional evidentiary circumstances, any indefiniteness and uncertainty in the identification testimony goes to its weight.

*Commonwealth v. Orr*, 38 A.3d 868, 874 (Pa. Super. 2011) (*en banc*) (citations omitted and formatting altered); *see also Johnson*, 180 A.3d at 478. "[T]he Commonwealth may establish the essential elements of the crime wholly by circumstantial evidence." *Commonwealth v. Ratsamy*, 934 A.2d 1233, 1237 (Pa. 2007) (citation omitted).

Instantly, the trial court addressed the evidence presented at trial as follows:

> [Appellant] [] asserts that there is no evidence of the buy itself and that the only photographs are of himself in the area where the buy occurred and around the same time of the buy.

> With this [] assertion, [Appellant] purports to admit that the photographs introduced as Commonwealth's Exhibits 12 and 13 in fact depict him. Either way, . . . the male depicted in the photographs wearing the white undershirt is clearly [Appellant] when compared with his JNET and driver's license photographs and because of his forearm tattoo. Additionally, the CI specifically testified that the person who handed the drugs to her was the man in the white undershirt and that the man the in the white undershirt was [Appellant]. . . .

> It is important to note that the CI also testified to the following specific facts: that she recognized [Appellant's] voice when they spoke on the phone to arrange the drug buy; that she recognized him when he showed up to sell her the drugs, even though she was expecting someone else; that it was [Appellant] who handed her the drugs; and that [Appellant] tried to give her significantly more drugs than what she had originally wanted.

> The CI's testimony, when corroborated with the other evidence and testimony presented at trial, the [c]ourt was convinced, and remains convinced beyond a reasonable doubt that [Appellant] committed the crimes with which he was charged. The CI did not have drugs on her person before she left Trooper Corl's vehicle but had them when she came back from her meeting with the two males. [Appellant] and his companion arrived at the exact same location as was pre-arranged between the CI and [Naj]. The timeline of text messages and phone calls between the CI and

[Naj] line up with when [Naj] and his companion arrived. Although there is no surveillance of the drug transaction itself, this is not necessary for the Commonwealth to prove its case. Taking into consideration all of the evidence presented, the [c]ourt finds that the Commonwealth has proven its case beyond a reasonable doubt.

Trial Ct. Op. & Order at 6-8.

Based on the totality of the circumstances and our review of the record, in viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we conclude that there was sufficient evidence to establish Appellant's identity as the perpetrator. *See Palmer*, 192 A.3d at 89.

As noted by the trial court, the Commonwealth presented two witnesses who identified Appellant as the perpetrator at trial. Specifically, the CI made an in-court identification of Appellant and noted that she knew him as Naj. *See* N.T. Trial, 9/13/21, at 85. The CI also stated that she had purchased drugs from Appellant on multiple occasions, that Appellant was the individual who sold her the drugs during the controlled buy, and that Appellant had been wearing a white undershirt at the time of the transaction. *Id.* at 88. Trooper Corl also testified that Appellant had been wearing a white undershirt when Appellant arrived at the agreed-upon time and location for the controlled buy. *See id.* at 37. Trooper Corl further stated that he observed the drug transaction via video, and that after the CI returned to the police vehicle with the drugs, the CI reported that she had purchased the drugs from the man in the white undershirt, who she knew as Naj. *Id.* at 39, 43. Finally, the Commonwealth introduced photographs and video that depicted Appellant

wearing a white undershirt at the scene of the controlled buy. **Id.** at 40, 42. On this record, we conclude that there was sufficient evidence establishing Appellant's identity. **See Orr**, 38 A.3d at 874; **Smyser**, 195 A.3d at 915; **Johnson**, 180 A.3d at 478. For these reasons, Appellant is not entitled to relief. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/20/2023